**Raymond HIDALGO, Jr., Appellant,**

v.

**The STATE of Texas.**

**No. 744–97**

Court of Criminal Appeals of Texas.

Jan. 13, 1999.

George Scharmen, San Antonio, for appellant.

Roderick B. Glass, Asst. Dist. Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLLAND, J., delivered the opinion of the Court in which MANSFIELD, PRICE, WOMACK, and KEASLER, J.J., joined.

Appellant Raymond Hidalgo, Jr., a juvenile, challenges his criminal conviction due to

error in his transfer from juvenile court. He contends he was denied his right to the assistance of counsel because his appointed attorney was not notified of the psychological examination, conducted pursuant to § 54.02(d) of the Juvenile Justice Code, until after the exam occurred.[1] The Fourth Court of Appeals rejected this contention holding, *inter alia*, no Sixth Amendment violation arose from the failure to give his attorney prior notice of the exam. *Hidalgo v. State*, 945 S.W.2d 313 (Tex.App.—San Antonio 1997). We granted appellant's petition for discretionary review to address whether his attorney was entitled to prior notice of the exam.

## I.

On December 25, 1997, while at a restaurant, appellant and a group of companions allegedly tried to initiate a fight with the victim, Charisma Perez, the victim's boy-friend, Chris Garcia, and her friend, John Bernal. A security guard intervened and made them leave. Unaware appellant and his companions were following them, Perez, Garcia, and Bernal drove to Bernal's apartment and parked. As Perez exited the car, she noticed a car coming towards her. As the car approached, Perez saw appellant leaning out of a car and pointing a hand gun towards her. Appellant fired the gun three or four times in Perez and Garcia's direction. Perez was shot in her left arm and abdomen. Garcia was not hit.

At the time of his arrest, appellant was fifteen years old. He was initially charged as a juvenile.[2] The State petitioned the juvenile court to transfer appellant to criminal court for prosecution as an adult.[3] The State also filed a motion requesting a psychological exam, as mandated by § 54.02(d).[4] The juvenile court granted the State's motion for a

---

1. The Juvenile Justice Code is Titles 3 and 4 of the Texas Family Code. All statutory references, unless otherwise indicated, are to the current Texas Family Code.

2. Pursuant to § 51.02(2), juvenile court jurisdiction attaches to any child age ten or older and under eighteen who engages in "delinquent conduct or conduct indicating a need for supervision" as defined by the code. Some law violations, however, are under the exclusive jurisdiction of the criminal court even though the person was under eighteen at the time the alleged offense. These offenses include perjury, traffic violations, offenses punishable by fine only, and certain alcohol violations. TEX. FAM. CODE § 51.03.

3. The transfer of a juvenile to criminal court is sometimes referred to as certification to criminal court or waiver of juvenile court jurisdiction. All of these terms refer to the process by which the court relinquishes its jurisdiction over a child and transfers the case to a court of criminal jurisdiction for prosecution as an adult. S. DAVIS, RIGHTS OF JUVENILES: THE JUVENILE JUSTICE SYSTEM § 4.1, 4–1 (1990). The Texas Family Code refers to juvenile transfer as "waiver of jurisdiction and discretionary transfer to criminal court." TEX. FAM.CODE § 54.02. For purposes of this opinion we will refer to this process as "transfer."

A juvenile court's discretionary power to transfer a juvenile can be exercised only where the State files a petition or motion requesting waiver and transfer. TEX. FAM.CODE § 53.04. When the State requests a transfer, the juvenile court is required to "conduct a hearing without a jury to consider transfer of the child for criminal pro-ceedings." TEX. FAM.CODE § 54.02. The question presented to the juvenile court is whether there is "probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal prosecution." TEX. FAM. CODE § 54.02(a)(3). In making this determination the juvenile court is required to consider: whether the alleged offense was against a person or property, with offenses against the person weighing more in favor of transfer; whether the alleged offense was committed in an aggressive and premeditated manner; whether there is evidence on which a grand jury may be expected to return an indictment; the sophistication and maturity of the child; the record and previous history of the child; and the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities available to the juvenile court. TEX. FAM.CODE § 54.02(f). For offenses committed on or after January 1, 1996, the legislature no longer requires a juvenile court to consider whether the alleged offense was committed in an aggressive and premeditated manner, or whether there is evidence on which a grand jury may be expected to return an indictment. TEX. FAM.CODE § 54.02(f).

4. Section 54.02(d) requires that prior to a hearing on the State's petition for transfer of a juvenile, the juvenile court "shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances and the circumstances of the alleged offense." TEX. FAM.CODE § 54.02(d). This report is intended for use in the transfer proceeding.

psychological exam and on March 7th and 8th appellant was examined by a psychologist. The psychologist's report was submitted to the juvenile court.[5]

The report from appellant's psychological exam concerned his intellectual development, psychological maturity, personality dynamics, and mental abilities. The report listed appellant's overall level of functioning, as measured on the Wechsler Scale, in the low-average (80–89) range of intelligence. The report indicated he was most proficient in logical reasoning, and least proficient in social judgment. The report also contained summaries of the psychologist's conversations with appellant concerning performance at school; participation in special education programs; relationships with teachers, family, and friends; medical history; substance abuse; sexual promiscuity; and how he viewed his past and present emotional state. The report concluded, among other things, appellant had a "conduct disorder" and "dsythymic disorder."[6]

On March 28, 1995, the juvenile court waived jurisdiction and ordered appellant to be transferred to criminal court for prosecution as an adult. A jury found appellant guilty of attempted capital murder and sentenced him to fifty years imprisonment.

## II.

On appeal, appellant relied on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) and *Satterwhite v. State*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Appellant claimed the failure to notify his attorney prior to the psychological examination violated his Sixth Amendment right to assistance of counsel. Specifically,

he claimed that without advance notice his attorney could not advise him of the nature and purpose of the examination.

The Fourth Court of Appeals rejected appellant's contention, distinguishing *Estelle* and *Satterwhite* on two grounds. First, *Estelle* and *Satterwhite* involved adjudicatory criminal proceedings, rather than non-adjudicatory juvenile transfer proceedings. *Hidalgo*, 945 S.W.2d at 319. Second, the rights at stake in *Estelle* and *Satterwhite* were "clearly of a greater magnitude" because the exams in those cases were used to determine eligibility for the death penalty.

The court of appeals recognized this Court has not addressed this issue. Relying on *Lagrone v. State*, 942 S.W.2d 602, 612 (Tex. Crim.App.1997) the court of appeals concluded the State's failure to give notice did not violate appellant's rights because this Court held a juvenile does not have a Sixth Amendment right to have counsel present during the psychological exam. *Hidalgo*, 945 S.W.2d at 319–20. The court reasoned that "if the Sixth Amendment is not violated when a juvenile's attorney is excluded from the examination itself, it stands to reason that no constitutional violation occurs when an attorney is not notified of the examination until after it has taken place." *Id.* at 320. The court rejected appellant's contention that he needed to consult with counsel to decide whether to submit to the exam on the basis that the exam is mandatory under section 54.02(d) of the Texas Family Code. The Court also noted that if appellant had such a right it was waived because the psychologist's report noted appellant was informed of his rights and the purpose of the exam, and he indicated he understood and was willing to proceed.

---

5. Section 54.02(e) authorizes the juvenile court to consider the report mandated by § 54.02(d) in making a determination on transfer. A juvenile court may also consider at the transfer hearing written reports from probation officers, professional court employees, or professional consultants. The court may also hear the testimony of witnesses. Tex. Fam.Code § 54.02(e).

6. The report does not reflect that appellant's attorney was notified as to when the exam was to occur. The record indicates that on March 6, 1995, the district attorney's office sent appellant's attorney, a copy of the motion and order

for the psychological exam by certified mail, along with the State's first amended petition for transfer. Noticeably absent from the record, however, is the return receipt documenting counsel's receipt of these documents. At a pretrial hearing, appellant's attorney testified he did not receive notice of the exam until the district attorney's office sent him a facsimile on March 23, 1995. In light of these facts, and the State's position that providing appellant's attorney with advance notice of the exam is neither constitutional nor statutorily required, we will assume no notice was given.

Appellant urges this Court to reverse the court of appeals' holding that lack of prior notice did not violate appellant's Sixth Amendment right to assistance of counsel.

### III.

Before this Court can address whether a juvenile's attorney is constitutionally entitled to prior notice of a court-ordered psychological exam, we must first determine whether the Sixth Amendment's right to assistance of counsel applies to juveniles. Though it has been long settled that the Bill of Rights applies to juvenile proceedings, to what extent remains undetermined, and this precise issue has not been decided by this Court or the U.S. Supreme Court.[7] Initially, procedural safeguards provided by the Constitution and the Bill of Rights were inapplicable to juvenile proceedings. *Lanes,* 767 S.W.2d at 792–94.[8] This was due to the philosophy underlying the creation of the juvenile court system which viewed juveniles as needing the state's care and guidance. State legislatures created juvenile courts for treatment and rehabilitation of child offenders. *Id.* at 792–93. The rehabilitative approach examined problems affecting individual offenders and structured individual rehabilitation programs to resolving "the wayward juvenile's family, social and personal problems and to prepare [the juvenile] to be [a] healthy, productive and law abiding adult[ ]." Jeffrey Fagan & Elizabeth P. Deschene, *Determinants of Judicial Waiver Decisions for Violent Juvenile Offenders,* 81 CRIM. L & CRIMINOLOGY 314, 318 (1990). The focus on individual treatment set juvenile courts apart from regular criminal courts. *Lanes,* 767 S.W.2d at 792–93. The juvenile court focused on the best interests of the child through treatment, and the adult criminal court directed its efforts at punishing the offender. One consequence of this distinction was that juveniles were denied many fundamental constitutional and procedural rights:

> Juvenile proceedings were defined as civil rather than criminal, rendering inapplicable the rules of criminal evidence and their appropriate safeguards against admittance of prejudicial and inflammatory evidence. . . . Thus, the juvenile system's protective rejection of the adult system came at the cost of the procedural and constitutional protections attendant thereto; a dubious tradeoff—to say the least—and, as was recognized early on, the results have been less than satisfactory.

*Lanes,* 767 S.W.2d at 792–93 [citations omitted].

The Supreme Court recognized the procedural injustice of the juvenile system in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In *Kent,* the Supreme Court determined that children should not be denied procedural rights given adults merely because juvenile proceedings are characterized as civil. *Kent,* 383 U.S. at 560, 86 S.Ct. at 1063. Identifying the transfer determination as "critically important," the Court held a state juvenile transfer process must operate in accordance with traditional notions of fundamental fairness. *Id.* The process must include a hearing, effective assistance of counsel, and counsel's access to the child's social file.

The Supreme Court continued defining fundamental constitutional protections applicable to the juvenile justice system in *In re*

---

7. *See Lanes v. State,* 767 S.W.2d 789, 791 (Tex. Crim.App.1989). The Supreme Court in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) determined that "[n]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." *See also Haley v. Ohio,* 332 U.S. 596, 601, 68 S.Ct. 302, 304, 92 L.Ed. 224 (1948) and *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962)).

8. In 1899, the Illinois Legislature enacted the first juvenile court act providing a system devoted entirely to the adjudication of juvenile offenders. *See* Act of April 21, 1899, ILL. Laws 131 §§ 1–21. By 1912, there were juvenile court systems in at least twenty-two states. All but two states had juvenile courts systems by 1925. Charles W. Thomas & Shay Bilchik, *Prosecuting Juveniles in Criminal Courts: A Legal and Empirical Analysis,* 76 CRIM. L. & CRIMINOLOGY 439, 451 (1985). Texas established a separate court system for juveniles in 1907, with the adoption of the Juvenile Court Act. BILL ANDERSON & RONNY GURLEY, THE JUVENILE OFFENDER & TEXAS LAW: A HANDBOOK (1969). Texas' first juvenile code was enacted in 1943 and included a provision for the prosecution of juvenile offenders in adult criminal courts. Act of 1943, 48th Leg., R.S. ch. 204, art. 2338–1 (Vernon 1971).

*Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Court held the Fourteenth Amendment's Due Process Clause applied to juvenile delinquency proceedings entitling children to notice of charges, defense counsel, the privilege against self-incrimination, confrontation of and cross examination of witnesses. *Gault,* 387 U.S. at 49, 87 S.Ct. at 1455. In subsequent cases, the Supreme Court continued its case by case approach for determining the applicability of constitutional protections to juveniles. Rather than grant juveniles the full array of protections under the Constitutions and Bill of Rights, the Court has chosen to examine each protection claimed and the effect it would have on the unique framework of the juvenile justice system.

In *Lanes v. State,* 767 S.W.2d 789 (Tex. Crim.App.1989), this Court was called on to determine whether the probable cause requirement of the Fourth Amendment of the U.S. Constitution and Article I § 9 of the Texas Constitution applies to juvenile arrests. Relying on the Supreme Court's eight foundation opinions on juvenile rights for guidance,[9] this Court distilled a test for delineating which constitutional protections apply to juveniles in juvenile court proceedings. This Court observed the Supreme Court, in evaluating whether and to what degree each constitutional protection extends to juvenile proceedings, utilized an analysis comparing the purposes and goals of the juvenile system to the particular right asserted. This Court then examined the purposes of the Texas juvenile system and the probable cause requirement, concluding the two did not conflict or undermine one another.

In adopting this balancing test this Court also announced a desire to "dispel the antiquated and unrealistic resistance to procedural safeguards" in the juvenile court system. We observed that due to the scarcity of treatment programs, professional training, and financial resources the juvenile system had become more punitive than rehabilitative. *Id.* at 800. Rather than ignore these realities we chose to balance the "aspirations of the juvenile court and the grim realities of the system." *Id.*

Recent amendments to the Juvenile Justice Code change juvenile adjudication and punishment, causing the "grim realities" to be even more salient. As this Court recently recognized in *Blake v. State,* 971 S.W.2d 451, 460 (Tex.Crim.App.1998), juveniles now face consequences similar to those faced by adults. Most apparent is the fact juveniles may now be subject to a forty-year term of imprisonment. TEX. FAM.CODE § 54.04(d)(3)(A)(i)–(iii). *Blake* recognized some of the legislative changes making the juvenile system more punitive than rehabilitative:

[T]he legislature expanded the definitions of delinquent conduct, expanded the list of felony offenses that authorize criminal proceedings for juveniles over the age of fourteen, authorized confinement in the Texas Department of Criminal Justice for various grades of felony and habitual felony conduct, categorized certain adjudications as 'final felony convictions' that can be used as enhancements for repeat offenders, removed provisions forbidding the maintenance of centralized photograph and fingerprint records, repealed laws about

9. The eight Supreme Court opinions: (1) *Haley v. Ohio,* 332 U.S. 596, 601, 68 S.Ct. 302, 304, 92 L.Ed. 224 (1948) entitling juveniles to protections against coerced confessions. *See* TEX. FAM. CODE § 51.09.; (2) *Kent v. U.S.,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) entitling juveniles to procedural protections in transfer hearings. *See* TEX. FAM.CODE § 54.02.; (3) *In re Gault,* 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967) entitling juveniles to rights of notice, counsel, confrontation, cross-examination and protection against self-incrimination. *See* TEX. FAM.CODE § 51.10, § 53.01, § 5 3.04, § 53.06, and § 54.03.; (4) *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) entitling juveniles to proof beyond a reasonable doubt in delinquency determination. *See* TEX FAM.CODE. § 54.06.; (5) *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) refusing juveniles the right to jury in delinquency determination; *But see,* TEX. FAM.CODE § 54.03.; (6) *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) entitling juveniles to double jeopardy protections. *See* TEX. FAM.CODE § 54.02(a)(2) and (j)(3)).; (7) *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) recognizing pre-trial detention of juveniles valid, (8) *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) entitling juveniles to a diminished Fourth Amendment standard in school searches. *See Lanes,* 767 S.W.2d at 794.

sealing and destruction of juvenile records, and mandated the use of the Texas Rules of Criminal Evidence and the evidentiary provisions of Chapter 38 of the Code of Criminal Procedure instead of their civil counterparts for judicial proceedings involving juveniles. *Blake,* 971 S.W.2d at n.28. These recent legislative changes continue to erode the original justifications for denying juveniles the same procedural protections as adults.[10] Therefore, consistent with our holding in *Lanes,* we will examine the juvenile proceeding at issue to determine whether it is the type of proceeding the Sixth Amendment was designed to protect. If so, we must then examine the impact or degree of impairment the constitutional protection will have on our juvenile justice system.

## IV.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. Designed to remedy any imbalance in our adversary system, the Sixth Amendment promises that an accused is entitled to defense counsel in all criminal prosecutions. *State v. Frye,* 897 S.W.2d 324, 327 (Tex.Crim.App.1995). Under the Federal Constitution, the Sixth Amendment right to counsel attaches upon the commencement of adversarial proceedings. *Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881–83, 32 L.Ed.2d 411 (1972). The right extends to all "critical stages" of the criminal proceeding, not just the actual trial. The Supreme Court, however, has not established a "bright line" rule to mark when adversarial proceedings begin. *United States v. Gouveia,* 467 U.S. 180, 187–89, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984). Instead, the Supreme Court has left this determination to state courts.

This Court has also refused to declare a "bright line rule." *See State v. Frye,* 897 S.W.2d at 327–28; *Green v. State,* 872 S.W.2d 717, 720 (Tex.Crim.App.1994).[11] Instead, this Court has recognized that determining whether a particular event is a critical stage—thus triggering a Sixth Amendment right to counsel—depends on whether the accused requires aid in coping with legal problems or assistance in meeting his adversary. *Frye, supra; Green,* 872 S.W.2d at 720–22.

Appellant relies on *Estelle* and *Satterwhite* for his contention that the failure to notify his attorney in advance of the examination violated his Sixth Amendment right to assistance of counsel. In *Estelle,* a capital murder prosecution, the trial court ordered a pre-trial psychiatric evaluation of the defendant to determine whether he was competent to stand trial. *Estelle,* 451 U.S. at 456–57, 101 S.Ct. at 1870. The defendant was determined competent and subsequently convicted of first degree murder. On appeal, the defendant complained his Fifth and Sixth Amendment rights were violated at the sentencing phase of the trial when the court permitted the State to present testimony of the psychiatrist who performed the evaluation. Affirming the order vacating the death sentence, the Supreme Court agreed. *Es-*

---

**10.** It is evident that this legislative trend towards punishment will continue in light of the public's perception of, and anxiety about, an increase in violent juvenile crime. Violent juvenile crime, however, has continued to decline. FBI's Annual Report, CRIME IN THE UNITED STATES 1996 & 1997. If this legislative trend continues and juveniles are subject to the similar punishment in juvenile court as in criminal court, the philosophy underlying the need for two separate court systems disappears.

**11.** Examples of actions which we have held to mark the initiation of formal adversarial proceedings include: filing an indictment, *DeBlanc v. State,* 799 S.W.2d 701 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); filing an information and complaint, *McCambridge v. State,* 712 S.W.2d 499 (Tex.Crim.App.1986); arraignment, *Michigan v. Jackson,* 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631 (1986); and an Article 15.17 "warning hearing," where an arrest warrant was present, *Nehman v. State,* 721 S.W.2d 319 (Tex.Crim.App.1986). The right to assistance of counsel under the Sixth Amendment is not triggered by an arrest alone. *Green,* 872 S.W.2d at 720; *Garcia v. State,* 626 S.W.2d 46, 53 (Tex.Crim.App.1981); *Kirby,* 406 U.S. at 688–91, 92 S.Ct. at 1881–83, 32 L.Ed.2d at 417–18; *c.f. United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

*telle,* 451 U.S. at 468–71, 101 S.Ct. at 1875–77.

The Court held that the psychological exam did not violate the defendant's Fifth and Sixth Amendment rights when used strictly to determine competency, but did violate those rights when used against him at the punishment stage. *Id.* The Court explained that by using the evaluation to prove the defendant's future dangerousness, the State had moved beyond the neutral purpose for which the exam was intended. *Estelle,* 451 U.S. at 464, 101 S.Ct. at 1874 The Court concluded that once the results of the exam were used for a "much broader objective that was plainly adverse" to the defendant the evaluation amounted to a custodial interrogation entitling the defendant to Fifth Amendment protections. *Id.* The Court also determined the defendant's Sixth Amendment right to counsel was violated because the State's later use of the examination at the sentencing proceeding caused the examination "to be a critical stage of the aggregate proceeding against the respondent." *Estelle,* 451 U.S. at 470, 101 S.Ct. at 1877.

Unlike *Estelle,* appellant is not complaining of the State's use of the psychologist's report against him at his criminal prosecution. Appellant is challenging the use of the report against him at the juvenile transfer hearing.[12] A similar argument was made in *United States v. A.R.,* 38 F.3d 699 (3 rd Cir.1994). The defendant, a juvenile, challenged the district court's transfer order on the basis that his constitutional rights were violated. *Id.* at 700. Relying on *Estelle,* the defendant maintained the psychiatric examinations conducted for use in his transfer hearing violated his rights under the Fifth and Sixth Amendment. At the defendant's transfer hearing, the government introduced several psychiatric and psychological reports. The evaluations, on which the reports were

based, were conducted in preparation for a similar transfer motion then pending in state court regarding unrelated state charges. *Id.* at 700–701. The reports were admitted over the defendant's objection that they violated his Fifth and Sixth Amendment rights because he was not *Mirandized* and his appointed counsel was not notified of the examinations.

On appeal to the United States Third Court of Appeals, the court determined the defendant's reliance on *Estelle* was misplaced. *United States v. A.R.,* 38 F.3d at 704. *Estelle* did not hold that a psychological exam is the sort of event to which the Sixth Amendment right to assistance of counsel attaches. Rather, *Estelle* held that if evidence acquired from the exam is used against the defendant during a criminal prosecution, the exam exceeds the neutral purpose for which it was intended and should be viewed as a critical stage. *Id.* at 704. As such, the Third Court of Appeals concluded that because evidence acquired from the exam was not used against the defendant in his criminal prosecution, but only in the juvenile transfer hearing, the defendant was not entitled to relief under *Estelle. Id.* at 705.

Rather than end its inquiry, the Third Court of Appeals went on to examine the applicability of the Fifth and Sixth Amendment to juvenile transfer proceedings. For guidance, the court looked to the reasoning in *Estelle* and conclude that, like a competency hearing, the proceeding is intended to serve an important neutral purpose. *Id.* The court emphasized that psychiatric and psychological reports obtained for purposes of transfer hearing, do not bear on the question of guilt or innocence; but only the manner in which the state proceeds against the accused. Citing the factors[13] used to measure whether a given proceeding is a critical stage trigger-

12. The record reflects that it was appellant's counsel who admitted the report into evidence during the punishment phase of appellant's criminal prosecution.

13. The court relied on the three factors extracted by the Ninth Circuit in *Menefield v. Borg,* 881 F.2d 696, 698–99 (9 th Cir.1989):

First, if failure to pursue strategies or remedies results in a loss of significant rights, the Sixth

Amendment protections attach. Second, where skilled counsel would be useful in helping the accused understand the legal confrontation ... a critical stage exists. Third, the right to counsel applies if the proceeding tests the merits of the accused's case.

*United States v. A.R.,* 38 F.3d at 704 (citing *Menefield v. Borg,* 881 F.2d at 698–99.)

ing the right to assistance of counsel, the Third Court of Appeals observed its reading of *Estelle* was consistent with established Sixth Amendment jurisprudence. The court of appeals also observed that its holding, in the language of *Estelle*, did not "derogate from the accused's right to a fair trial." *United States v. A.R.*, 38 F.3d at 705 (citing *Estelle*, 451 U.S. at 470, 101 S.Ct. 1866).

## V.

■ After exploring the purpose of the transfer mechanism, the judicial transfer process,[14] and the trial court's use of psychiatric and psychological reports, we conclude the Texas juvenile transfer proceeding serves a neutral purpose. State legislatures originally devised the process as a means of removing serious or persistent juvenile offenders generally not amenable to rehabilitation to the adult criminal system. The presence of such juveniles in the juvenile system was seen as a threat to the fundamental structure of the juvenile system and the less criminally sophisticated.[15] Transfer was intended to be used only in exceptional cases. The philosophy was that, whenever possible, children "should be protected and rehabilitated rather than subjected to the harshness of the criminal system" because "children, all children are worth redeeming." PRESIDENT'S COMMISSION ON LAW ENFORCEMENT AND ADMINISTRATION OF JUSTICE (1967).

The Supreme Court acknowledged the critical importance of transfer in *Kent*. To limit the juvenile court's discretion in making the transfer determination, the Supreme Court set out a series of factors for juvenile courts to consider. The *Kent* factors were classified according to the potential danger to the public, contrasted with the juvenile offender's amenability to treatment. These factors are incorporated into Texas juvenile waiver law. *See* TEX. FAM.CODE § 54.02(f).[16] To assist the court in assessing these factors, the law requires a psychological examination by a doctor with specialized training in adolescent psychology and forensic assessment. TEX. FAM.CODE § 54.02(d). The exam provides insight on the juvenile's sophistication, maturity, potential for rehabilitation, decision-making ability, metacognitive skills, psychological development, and other sociological and cultural factors.

■ Appellant contends the tremendous consequences transfer had on him as a juvenile offender required that his attorney be given prior notice of the exam so that he could advise appellant as to the nature and purpose of the exam, as well as the consequences of transfer. Appellant rejects the court of appeals' reliance on *Lagrone v. State*, contending this Court did not hold a juvenile is not entitled to confer with counsel before the examination.[17] He also main-

14. Essentially, states have devised three means for transferring juveniles to criminal district court for adult prosecution: judicial transfer, prosecutorial transfer, and legislative transfer. The present case involves judicial transfer, a mechanism by which a juvenile court judge may exercise independent discretion in determining whether to transfer a particular juvenile. Under the prosecutorial transfer mechanism prosecutors have unilateral authority to determine the adjudicatory forum. Unlike judicial and prosecutorial transfer, legislative transfer is not discretionary. This mechanism excludes certain juveniles or certain offenses from juvenile court jurisdiction and places juveniles in the adult criminal court system regardless of independent circumstances indicative of the juvenile's amenability rehabilitation. *See* TEX. FAM.CODE § 54.02(m).

15. *See e.g.*, Douglas Harris, *Does the Texas Juvenile Waiver Statute Comport with the Requirement of Due Process?*, 26 TEX. TECH L. REV. 813 (1995); Gordon A. Martin, Jr., *The Delinquent and the Juvenile Court: Is There Still a Place for Rehabili-*

*tation?*, 25 CONN. L. REV. 57, 62–63 (1992); Robert O. Dawson, *Delinquent Children and Children in Need of Supervision: Draftsman's Comments to Title 3 of the Texas Family Code*, 5 TEX. TECH L. REV. 509 (1974); Barry C. Feld, *Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions*, 62 MINN. L.REV. 515, 517–19 (1978).

16. The juvenile court is not required to find each criterion before it can a transfer a case to district court. The court may order a transfer on the strength of any combination of the criteria. TEX. FAM.CODE § 54.02(f); *see e.g.*, *United States v. Doe*, 871 F.2d 1248, 1254–55 (5th Cir.), *cert. denied*, 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989). Should the juvenile court decide to waive its exclusive jurisdiction, the court is required to state in its order the specific reasons for waiver. TEX. FAM.CODE § 54.02(h).

17. The court of appeals' reading of *Lagrone* is incorrect. This Court determined in *Lagrone* that a trial court may order a defendant to sub-

tains the court of appeals erred in downplaying the significance of transfer because though transfer is not a life and death matter, the consequences may be similarly devastating. We agree. We join at least one other state court which found transfer to criminal district court for adult prosecution is "the single most serious act the juvenile court can perform ... because once waiver of jurisdiction occurs, the child loses all protective and rehabilitative possibilities available." *State v. R.G.D.*, 108 N.J. 1, 527 A.2d 834, 835 (N.J.1987). Once transferred, a child will be subject to the retributive punishment of the criminal justice system instead of the rehabilitative goal of the juvenile justice system. Should the State's transfer petition be granted, the juvenile will be subject to more stringent punishment.[18] Additionally, loss of juvenile status results in "the personal degradation and restriction of legitimate opportunity that often follow a criminal conviction."[19] Despite the tremendous consequences, however, we cannot say the psychological exam itself constitutes a critical stage triggering Sixth Amendment protection.

▆▆▆ As previously discussed, whether a particular event is a critical stage depends on whether the accused requires aid in coping with legal problems or assistance in meeting his adversary. *See State v. Frye*, 897 S.W.2d at 327–28; *Green*, 872 S.W.2d at 720–22. In the psychological exam itself, the abuses the Sixth Amendment was devised to protect against are not present. In the transfer hearing, where determination is actually made, a juvenile is entitled to the assistance of counsel. TEX. FAM.CODE § 51.10(a)(2); *Kent v. United States, supra.* Also in the transfer hearing, the juvenile has the opportunity to challenge the methods employed in the exam and the conclusions reached in the report.[20] As for appellant's contention that juveniles should be advised as to the nature and purpose of the exam, we agree. However, we cannot say the exam itself is the type of legal confrontation that can be understood only after consulting with counsel. As in the present case, the doctor administering the evaluation typically apprizes the juvenile of his or her rights with regard to psychological testing and the purpose of the examination. Furthermore, because the exam is mandated by statute, counsel is aware of the need to advise his client when the State files the transfer petition. TEX. FAM.CODE § 54.02(d).

Our holding today protects the individualistic and rehabilitative philosophy of the juvenile system because it preserves the judicial transfer process which, unlike prosecutorial or legislative transfer, examines and considers those issues specific to the individual juvenile.[21] Judicial transfer permits the in-

mit to a state-sponsored psychiatric exam on future dangerousness when a defendant demonstrates an intent to put on future dangerousness expert testimony without violating the defendant's Fifth Amendment right against self-incrimination. *Lagrone*, 942 S.W.2d at 612. The *Lagrone* Court also conclude that excluding defense counsel from the future dangerous examination did not violate the defendant's right to counsel. *Id.* at 612.

18. As one commentator succinctly summarized:

There is convincing evidence that most juvenile court personnel, and the judges themselves regard the waiver of jurisdiction as the most severe sanction that may be imposed by the juvenile court. Not only is the juvenile exposed to the probability of severe punishment, but the confidentiality and individuality of the juvenile proceeding is replaced by the publicity and the normative concepts of penal law; the child acquires a public arrest record which, even if he is acquitted, will inhibit his rehabilitation because of the opprobrium attached thereto by prospective employers; if convicted as an adult, the child may be detained well past his twenty-first birthday, he may lose certain civil rights and be disqualified for public employment. Moreover, if sent to a typical adult prison, he is likely to be subjected to physical, and even sexual abuse by older inmates, and his chances for rehabilitation are likely to decrease significantly.

F. Thomas Schornhurst, *The Waiver of Juvenile Court Jurisdiction: Kent Revisted*, 43 Ind. L.J. 583, 586–87 (1968).

19. Harris, *supra* note 14 at 830 (citing Donna M. Bishop et al., *Prosecutorial Waiver: Case Study of Questionable Reform*, 35 CRIME & DELINQ. 179, 181 (1989)).

20. Section 54.02(e) requires that the report, as well as all other written matter considered in the transfer determination, be disclosed and made available to the juvenile's attorney at least one day prior to the transfer hearing.

21. Judicial transfer is the only method for transfer that provides for a hearing before a juvenile is

terests of both society and the juvenile to weigh against each other in a neutral setting. Use of statements made in the exam the juvenile's criminal prosecution disregards the rationale for the exam and effectively transforms the exam into a criminal investigation. Also, if juveniles can not be assured that their statements can not be used against them in future criminal prosecutions, they will not want to participate in the exam. As such, the juvenile court's ability to obtain all available information and to gather reliable evidence would be frustrated.

## VI.

Though this Court recognizes today that counsel serves no functional purpose in the psychological exam conducted for the neutral purpose of determining whether a juvenile should be transferred to criminal court, we are not blind to the potential for injustice. In light of the criteria a juvenile court is required to consider in making its determination on transfer, we recognize that it is all but inevitable, that in the course of any psychiatric or psychological examination, the doctor will inquire into the facts of the alleged offense and the juveniles's prior criminal experiences. *See* Tex. Fam.Code § 54.02(d) & (f). Such a query is permissible so long as it is not intended to force juveniles to supply incriminating evidence or investigative leads against themselves. Failure to limit the query to its permissible purpose could lead to a violation of a juvenile's right against self-incrimination or right to counsel.

■ Though the psychological report in this case contained information concerning appellant's previous delinquency and criminal conduct, as well as a summary of the doctor's conversation with appellant regarding the offense alleged and his prior delinquent conduct, we cannot say the exam exceeded its intended purpose.[22]  Because appellant was forced to supply neither incriminating evidence nor investigative leads, we do not agree with appellant's contention that the exam amounted to a custodial interrogation entitling him to Fifth and Sixth Amendment protections. Furthermore, because the State's use of the information elicited from the exam was limited to the transfer determination, we find no constitutional violations consistent with *Estelle* or *Satterwhite.*

The decision of the court of appeals and the judgment of the trial court are affirmed.

KELLER, J., filed a concurring opinion, in which McCORMICK, P.J., and JOHNSON, J., joined.

MEYERS, J., dissented without opinion.

KELLER, J., filed a concurring opinion in which McCORMICK, P.J. and JOHNSON, J., joined.

Sec. 54.02(d) requires the juvenile court to order "a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense" prior to a transfer hearing. Appellant's ground for review asks, "Must defense counsel be given advance notice of a psychological examination of a juvenile which is to be used later by the state in its case against the juvenile in adult charges?" The majority assumes that notice was not given, and then focuses on the second part of the ground for review, discussing matters other than the question of notice. I would hold that counsel *is* given advance notice of the exam by virtue of the fact that the examination is statutorily required. Once the transfer petition was filed against appellant, his counsel was on notice that if he

---

sent to adult criminal court. *See supra* n. 14. Prosecutorial and legislative transfer fail to take into account the juvenile's life circumstances which may demonstrate a traumatic or problematic life history.

**22.** Regarding the alleged offense and appellant's prior delinquency, the report simply stated:

Raymond reports that he is currently residing in the Bexar County Juvenile Detention Center because, "they're trying to say I shot somebody." He went on to deny the allegation. He states that he has been previously referred to the Juvenile Department for auto theft, burglary of a habitation, possession of marijuana. He knows that such behavior is wrong, knows right from wrong, and understands the possible consequences of such behavior. He understands the possible consequences of the upcoming certification of transfer hearing as well as the roles of the participants therein.

needed to advise his client, he had better do so.

I concur in the Court's judgment.