**Affirmed and Opinion Filed July 3, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01284-CV

### IN THE MATTER OF K.M.D., a child

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-17-01047-X**

## MEMORANDUM OPINION
Before Justices Bridges, Myers, and Schenck
Opinion by Justice Bridges

The juvenile court certified KMD, a fourteen-year-old, to be tried as an adult and transferred criminal proceedings to a criminal district court. On appeal, he argues the juvenile court's certification and transfer order was deficient and lacking in specificity to waive its original jurisdiction. We affirm.

### Background

On July 26, 2017, decedent and others were playing basketball in a Dallas city park when several vehicles drove by. KMD drove the first vehicle, a red Chevrolet four-door Impala. BD sat in the front passenger seat, and two others sat in the backseats. According to BD, "somebody" had a "previous beef" with decedent.

The Impala drove by the park again. Although KMD initially drove the car, he switched seats at some point with BD. KMD fired a weapon twice out of the front passenger side window striking decedent in the head.[1] The car immediately left the scene.

Based on a 9-1-1 call, officers located the Impala within minutes and a chase ensued. By this time, KMD was again driving and BD was in the front passenger seat. During the chase, BD exited the car and fled on foot while KMD continued to flee in the car.

Officers caught BD and recovered a .380 semiautomatic weapon from his pants pocket. KMD eventually ended the car chase, and officers took all four individuals into custody. KMD denied shooting anyone, but admitted he evaded arrest because he did not have a driver's license.

Detective Cayce Shelton interviewed several witnesses to the crime. One witness on the basketball court thought the shots came from the black car following the Impala. However, a woman on her front porch heard gunshots and saw a person with his arm out the right front passenger side window of the Impala. Two passengers in the Impala said KMD was the shooter and the third passenger, KMD's brother, would not identify KMD as the shooter but said "the shots came from where he was sitting." After interviewing the passengers in the Impala, the people in the car following the Impala, neighbors, and those on the basketball court, Detective Shelton was confident KMD was the shooter.

KMD was charged with intentionally and knowingly causing the death of an individual by shooting him with a firearm in violation of section 19.02 of the penal code.

On August 3, 2017, the State filed its Petition for Discretionary Transfer to Criminal Court, asking the juvenile court to waive its jurisdiction and transfer KMD's case to adult criminal court. *See* TEX. FAM. CODE ANN. § 54.02 (West 2014). As required by family code section 54.02(d),

---

[1] Decedent was eighteen years old.

the trial court ordered a complete diagnostic study, social evaluation, and full investigation of KMD, his circumstances, and circumstances of the alleged offense.

After the evaluations were completed, the juvenile court conducted a hearing regarding the State's motion to transfer. Two witnesses testified at the hearing: Detective Shelton, the lead investigator, and Kendrick Smith, a juvenile probation officer. Smith prepared the social evaluation and investigative report. The juvenile court took judicial notice of the reports without objection. Smith recommended the juvenile court grant the State's petition for discretionary transfer.

At the conclusion of the hearing, the juvenile court made oral findings on the record. On October 16, 2017, the court signed its waiver of jurisdiction and order of transfer to a criminal district court. The order stated the court considered "all the testimony, diagnostic study, social evaluation, and full investigation" and found "it is contrary to the best interest of the public to retain jurisdiction." This interlocutory appeal followed.[2]

### Standard of Review and Applicable Law

To waive its jurisdiction and transfer KMD to adult criminal court, the juvenile court had to find KMD was alleged to have committed a felony, he was fourteen years old or older at the time he committed the alleged offense, after a full investigation and a hearing there was probable cause to believe KMD committed the alleged offense, and the welfare of the community requires criminal proceedings because of the alleged offense's seriousness or KMD's background. *See* TEX. FAM. CODE ANN. § 54.02(a)(1)–(3).

---

[2] Although juvenile certification cases are on an accelerated 180-day deadline for this Court, this case was delayed by actions outside the Court's control. *See* TEX. FAM. CODE ANN. § 56.01(h-1) (West Supp. 2017). The notice of appeal was filed on November 6, 2017. Appellant's deadline for filing his brief began to run on January 4, 2018. Appellant did not file a brief on the January 24, 2018 deadline. The Court, on its own action, issued two separate orders ultimately resulting in an abatement of the appeal until the trial court held a hearing to determine whether appellant desired to continue the appeal. On March 28, 2018, the trial court held a hearing. The trial court filed its findings in this Court on April 13, 2018. Appellant's brief was filed on April 27, 2018, and the State's response brief was filed on May 31, 2018.

In making the determination required in subsection (a), the juvenile court had to consider, among other matters: (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) KMD's sophistication and maturity; (3) KMD's record and previous history; and (4) the prospects of adequate protection of the public and the likelihood of KMD's rehabilitation by use of procedures, services, and facilities currently available to the juvenile court. *See id.* § 54.02(f). These are nonexclusive factors that serve to facilitate the juvenile court's balancing of the potential danger to the public posed by the particular juvenile offender with his amenability to treatment. *Moon v. State*, 451 S.W.3d 28, 38 (Tex. Crim. App. 2014) (citing *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)). Family code section 54.02(h) requires that if the juvenile court waives jurisdiction, "it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court." TEX. FAM. CODE ANN. § 54.02(h); *Moon*, 451 S.W.3d at 38.

With regard to our review of that order, the court of criminal appeals has instructed us as follows:

> [I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

*Moon*, 451 S.W.3d at 47. Further, a reviewing court should measure sufficiency of the evidence to support the juvenile court's stated reasons for transfer by considering the sufficiency of the evidence to support the facts as they are expressly found by the juvenile court in its certified order. *In re G.B.*, 524 S.W.3d 906, 914–15 (Tex. App.—Fort Worth 2017, no pet.). The appellate court should not be made to rummage through the record for facts that the juvenile court might have found, given the evidence developed at the transfer hearing, but did not include in its written transfer order. *Id.* Thus, in conducting a sufficiency review of the evidence to establish the facts relevant to section 54.02(f) factors and any other relevant historical facts, which are meant to inform the juvenile court's discretion whether the seriousness of the offense alleged or the background of the juvenile warrants transfer for the welfare of the community, the appellate court must limit its sufficiency review to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile court's transfer order under Section 54.02(h). *Id.*

However, while the order must show the juvenile court considered the four factors in section 54.02(h), the court "need make no particular findings of fact with respect to those factors." *Moon*, 451 S.W.3d at 41–42; *see also In re D.L.C.*, No. 06-16-00058-CV, 2017 WL 1055680, at *6 (Tex. App.—Texarkana Mar. 21, 2017, no pet.) (mem. op.) (recognizing that "there may be no reversible error even when the juvenile court's order seemingly restates the factors contained in section 54.02, as long as the enumerated reasons were supported by evidence"). Further, the court may order a transfer on the strength of any combination of the criteria listed in section 54.02(f). *Hidalgo*, 983 S.W.2d at 754 n.16.

### Discussion

KMD challenges the trial court's failure to "show its work" as required by *Moon*. He argues the transfer order does not include specific, concrete facts supporting (1) KMD's "refusal to remain away from associates who habitually violate the law," (2) his "actions and conduct as a

principal or party in the commission of the offense," (3) his "sophistication and maturity is excessive for his age," and (4) his "likelihood of reasonable rehabilitation . . . is remote" and "contrary to the best interest of the public."  We interpret KMD's arguments as challenging only the legal sufficiency of the evidence to support the juvenile court's findings.

We begin by analyzing the trial court's order for its specific findings.  The relevant portion of the order states as follows:

> The Court finds that said offense is a felony under the penal law of the State of Texas. The Court finds that the alleged offense was against a person; and the Court finds that there is probable cause to believe that the Respondent committed the offense alleged in the State's Petition for Discretionary Transfer.
>
> The Court finds the Respondent is of excessive sophistication and the Respondent's level of maturity is excessive to be tried as an adult and to aid an attorney in his defense. After considering all the testimony, diagnostic study, social evaluation, and full investigation, the Court finds it is contrary to the best interest of the public to retain jurisdiction.
>
> The Court finds for the welfare of the community, the seriousness of the alleged offense and the background of the Respondent, that criminal proceedings are required.

Thus, the order indicates the juvenile court concluded the welfare of the community required criminal proceedings because of both the seriousness of the offense and KMD's background.

We first consider the seriousness of the offense.  In *Moon*, the court concluded the juvenile court abused its discretion by waiving jurisdiction when the transfer order found only that "because of the seriousness of the OFFENSE, the welfare of the community requires criminal proceedings" without any specific findings about the murder except that it was committed against another person.  451 S.W.3d at 48.  The order at issue in the present case does not suffer from the same fatal flaw.  Rather, the court's order provides "the reasons for this disposition are that: . . . the Respondent's conduct was willful and violent; a deadly weapon, to wit: <u>a firearm</u>, was used during the course of the offense; [and] death resulted to the victim."  Thus, the court "showed its work"

and provided specific facts regarding its finding that transfer was appropriate because of the seriousness of the offense.

Our review of the record likewise indicates the evidence is legally sufficient to support the trial court's specific finding regarding the seriousness of the offense. The court heard testimony that KMD circled the park twice before shooting decedent twice in the head killing him. He then fled the scene. When officers were in pursuit, he continued to drive away until he finally ended the chase and was captured. Smith, the probation officer, testified the offense was committed in "an aggressive, violent, and premeditated manner." Thus, there is more than a scintilla of evidence supporting the court's determination that the circumstances of this particular murder was "willful and violent." *See Moon*, 451 S.W.3d at 48 (distinguishing between generic findings related to the "category of crime alleged" and findings concerning "the specifics of a particular offense").

We now consider the juvenile court's finding that criminal proceedings are required because of KMD's background. In its order, the court explained "the reasons for its disposition" were in part because of KMD's "refus[al] to remain away from associates in the community who habitually violate the law; the sophistication of the child is excessive for his age; and his level of maturity is excessive; . . . and the previous history of the Respondent."

The court heard and reviewed the following testimony regarding KMD's background. KMD's parents had extensive criminal histories and substance abuse issues. After their parental rights were terminated, KMD was raised by his paternal grandmother. She described his behavior as "fair to poor." He had little regard for her authority and instead was influenced by negative peers to engage in delinquent behavior. KMD told Smith that some of his peers used drugs, had criminal histories,[3] and were affiliated with gangs. He also admitted he was not responsive to Grandmother's supervision.

---

[3]BD, one of the occupants in the car during the shooting, had five referrals to the Dallas County juvenile department.

KMD's psychological evaluation indicated a severe level of depression and the profile of an individual who is unhappy, emotionally labile, and quite angry. He admitted to using guns, stealing food, and setting fires. He believed he was antisocial and struggled to manage his behavior. KMD admitted difficulty with anger and explained his outbursts "may" cause him to "black out" sometimes. He never hurt anyone during these episodes, but recalled hurting his hands by punching a wall during a "black out" and holding a knife to his throat during another episode.

Although Grandmother denied that KMD physically assaulted her, she admitted he had a history of violence and aggression in the home. Grandmother tried her best to keep KMD enrolled in school, but he regularly left campus after she dropped him off. A school resource officer reported KMD attended school under the influence of marijuana and smoked on campus. KMD told Smith he began smoking marijuana when he was seven and had used it to some extent ever since then. He tested positive for marijuana and Xanax the day of the offense.

Smith described KMD as having a level of sophistication higher than those similar to other fourteen-year-olds. Smith described the offense as "extremely sophisticated in nature" and "reflective of an individual much older than himself," who "demonstrates a lack of respect for authority and a person's life." Smith ultimately concluded, in part, the following:

> Due to the subject's pending offense, his current age, his drug history, and his association with older and negative peers who have criminal histories, who use drugs, and who have gang affiliations, rehabilitation of the subject within the Juvenile Justice System is remote. Due to the aggressive, violent, and deadly-nature of the pending offense, which resulted in loss of human life, this case warrants transfer to the Adult Criminal Court.

Thus, there is more than a scintilla of evidence supporting the court's determination that KMD's background supported transfer to criminal court. *See, e.g., In re S.G.R.*, 496 S.W.3d 235, 241–42 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (juvenile's admission to criminal activity and

frequent possession and use of drugs weighed in favor of waiver of jurisdiction and transfer to criminal district court).

Finally, the trial juvenile court determined the likelihood of reasonable rehabilitation was remote and retaining jurisdiction was contrary to the best interests of the public. KMD admitted to anger issues, drug use, and associating with negative influences. Because of these issues, Smith testified KMD's likelihood of rehabilitation with the services available through the juvenile system was remote. Thus, there is more than a scintilla of evidence supporting transfer to criminal court because rehabilitation was remote and retaining jurisdiction was contrary to the best interests of the public.

The juvenile court considered each of the section 54.02(f) factors and stated specific reasons and findings in support of its decision to waive its jurisdiction and transfer KMD for trial as an adult. Its findings are supported by legally sufficient evidence. The court of criminal appeals has advised that "the juvenile court that shows its work should rarely be reversed." *Moon*, 451 S.W.3d at 49. "As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment absent a scenario in which the facts in the transfer order, based on evidence produced at the transfer hearing . . . bear no rational relation to the specific reasons the order gives" to justify transfer. *Id*. at 46. Given the juvenile court's board discretion, we hold that this is not the rare case in which reversal is warranted in spite of the juvenile court's adherence to the statutory criteria. In light of the juvenile court's findings and our review of the record, which supports those findings, we conclude the juvenile court did not abuse its discretion by waiving jurisdiction and transferring KMD for trial as an adult. We overrule KMD's sole issue.

## Conclusion

The juvenile court's certification and transfer order is affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

171284F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF K.M.D., a child

No. 05-17-01284-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JD-17-01047-X.
Opinion delivered by Justice Bridges.
Justices Myers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 3, 2018.