## STANFIELD v. TEXAS POWER CORPORATION et al. (No. 8098.)

Court of Civil Appeals of Texas. San Antonio. Jan. 9, 1929.

Rehearings Denied Feb. 13, 1929.

Quin & Harley, of San Antonio, and John C. Hoyo, of Seguin, for appellant.

Bisbee, McKone & Wilson, of Jackson, Mich., and J. B. Dibrell, A. J. Wirtz, and R. A. Weinert, all of Seguin, for appellees.

COBBS, J. Appellant sued appellees for damages alleged to have accrued to appellant by reason of the alleged breach of a contract claimed by appellant to have been thereto-

fore entered into by appellant and appellee involving certain engineering, construction, and financing work performed for Texas Power Corporation; and for judgment as against appellee Texas Power Corporation, requiring said Texas Power Corporation to pay into the registry of the court all moneys and properties held by said corporation and owing for engineering, construction, and financing work done by appellant, Stanfield, and appellee Fargo Engineering Company, for appellee Texas Power Corporation; and praying that same be applied to the payment of appellant's demands against appellee Fargo Engineering Company.

Appellant states that the only issue to be disposed of is: Did the trial court err in sustaining a general demurrer to appellant's petition?

In this case the Texas Power Corporation and the Fargo Engineering Company filed separate answers, and each filed a separate general demurrer, which was sustained by the court, and plaintiff failing to amend the cause was dismissed.

■ In disposing of cases where causes are dismissed on a general demurrer, every intendment is in favor of the sufficiency of the pleading which shall be indulged in, and in testing this pleading we must assume every allegation in the petition is true.

■ The petition alleges a contract entered into between plaintiff and F. H. Willmont and W. B. Dunlap, partly in writing and partly orally; that Willmont and Dunlap had an option from the Guadalupe Water Company, a Texas corporation, on certain dams, water rights, easements, and privileges on the Guadalupe river, belonging to Guadalupe Water Power Company; the said Dunlap and Willmont being interested together in a joint enterprise of financing and undertaking to develop said water power.

Appellant was to do the preliminary engineering investigation and make a report of the feasability of building a number of hydroelectric dams on said river and of financing a new company to construct and build said dams. The price to be paid for said services was stated, and appellant's connection with the enterprise was to continue until the contract was completed and the dams constructed and accepted.

It is alleged that appellant performed the services required of him, and that his report was accepted by the said Willmont and Dunlap, and used by them and their successors in financing and completing the enterprise. The successors were Guadalupe Power Company and the Texas Power Company, both of which corporations were the result of the efforts of the said Willmont and Dunlap.

Willmont and Dunlap and others organized a Delaware corporation known as Guadalupe Power Company, which is the outgrowth and incorporated legal entity of Willmont and

Dunlap, which corporation assumed the responsibility and liability of Willmont and Dunlap and continued to employ appellant. Thereafter Texas Power Corporation became organized and succeeded to all the rights and liabilities of Willmont and Dunlap. So it will be seen from these recitals that the Texas Power Corporation became and was the successor company.

Appellant alleged that after his preliminary investigation of the Guadalupe hydraulic project he entered into a contract, partly in writing and partly oral, with the defendant Fargo Engineering Company, by the terms of which contract it was agreed that they should both enter into the proposition of engineering and financing the Guadalupe Water Power enterprise as a joint enterprise and partnership; appellant to complete his preliminary survey and agreement and to act as consulting engineer in an advisory capacity when needed; the Fargo Engineering Company to do the actual engineering work on the constructing, to assist in procuring the finances if necessary, and to do what was necessary in completing the said project. That said agreement between appellant and Fargo Engineering Company was a joint enterprise and partnership arrangement to continue until the work was complete on said dams; and both parties were to be mutually and jointly interested in the profits on a basis of 50 per cent. of the net profits to appellant and 50 per cent. to Fargo Engineering Company; the money to be collected as and when available and to be thus divided, and both parties to said contract to be equally interested in all profits and contracts, no matter with whomsoever made in connection with said enterprise.

These facts show a complete contract pleaded as between appellant and appellee Fargo Engineering Company, their respective duties and consideration moving from one to the other. Appellee Fargo Engineering Company collected 8 per cent. on the value of the work, amounting to $140,000 and 1,700 shares of the capital stock of Texas Power Corporation, earned and collected as a result of the contract entered into between appellant and Willmont and Dunlap and subsequently between appellant and appellee Fargo Engineering Company.

Appellant further alleges that H. S. Hunt, vice president of Fargo Engineering Company, represented to appellant that he would protect him in all matters of the enterprise when it was not possible for appellant to be present, and represented to him further that he would protect his interest and collect 50 per cent. of the profits for him and turn the said amount over to him and would carry out in good faith the terms of said agreement. Appellant believed all of said statements made by H. S. Hunt to be true, and believed that appellee Fargo Engineering Company would carry out their contract as stated, all

of which they failed and refused to do, and appellant believing said representations and statements did not discover that they were not true until the work was started and partially completed, on or about September 1, 1927; that appellant then discovered that all of said representations so made by the said Hunt were false and fraudulent and made for the purpose of depriving appellant of his contracts and valuable rights and properties thereunder.

Appellant alleges that he is informed and believes that Fargo Engineering Company is secreting and fraudulently depriving him of valuable property rights to which he is entitled under said contract, and that said property is being secreted and held by the Hunt Development Company, a corporation which has been organized for the purpose of secreting from and fraudulently depriving appellant of his interest in his contract.

That appellee Fargo Engineering Company has constructed three of said dams in accordance with the plans and specifications substantially as outlined by appellant, and has earned and collected a fee of approximately $140,000, of which $100,000 is net profit, and has set aside to Fargo Engineering Company 1,700 shares of the no par common stock of the Texas Power Corporation as a part of the fee earned under said contract with plaintiff and an amount of preferred stock which is unknown to appellant, but it is also a part of said engineering fee to which he is entitled to share. That said Fargo Engineering Company has failed and refused to carry out its contract with appellant, and failed and refused to pay over to appellant his share of the fees collected.

Appellant further alleges that Fargo Engineering Company has earned all and collected a portion of said fee earned for said engineering and financing work and has refused to pay over to appellant his one-half portion or any part thereof; that there is a further amount of stock and cash which has been earned and is being held by appellee Texas Power Corporation, which money was earned as a result of said contract of engineering, construction, and financing; and appellant prays that the Texas Power Corporation be required to pay into the registry of the court this amount, to be credited on appellant's claim under said contract.

Appellant prayed judgment against Fargo Engineering Company for his alleged damages in the sum of $50,000, being one-half of the net sum earned on said engineering contract; one-half, or 850 shares, of the common stock of Texas Power Corporation, one-half of whatever amount of preferred stock shall be found to have been paid to Fargo Engineering Company, and one-half of all other moneys or property that Fargo Engineering Company may be entitled to, etc.

It is obvious from the petition that there are full and complete allegations of a contract between him and Fargo Engineering Company; the reaping of benefits from the contract; his compliance with the terms of the contract; the refusal of appellee Fargo Engineering Company to deliver to appellant any portion of the money collected or the benefits received from the contract, which all go to the proper statement of a pleading stating a cause of action for damages for the fraudulent breach of a contract for damages.

The contract is not in violation of the Statute of Texas, art. 3995. It does not come within the statute of fraud relating to contracts not performable in one year, for the part performance takes the same out of the statute of fraud. The contract was partly performed, and appellee Fargo Engineering Company collected the greater part of the consideration. Priddy v. Green (Tex. Civ. App.) 220 S. W. 243; Pou v. Dominion Oil Co. (Tex. Com. App.) 265 S. W. 886.

It would not do to say, because the petition shows a partnership undertaking or a joint enterprise entered into by a corporation and an individual, particularly when the face of the petition shows performance by appellant and the benefits received by appellee, that that fact will subject it to the benefits of a general demurrer.

This doctrine is announced in Kincheloe Irr. Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S. W. 1187. Justice Dibrell, in his usual and ordinarily terse style, in delivering the opinion of the court said: "If the contract entered into was for a business not authorized by defendant's charter and therefore ultra vires, a plea setting up such defense is unavailing if as a matter of fact the corporation received benefits under such agreement. It may be stated as a rule of law that an action for damages for breach of contract will not be avoided by the plea of ultra vires, when the corporation has received benefits under the alleged illegal contract. In such a case, and under such circumstances, the corporation is estopped from denying its power to make the contract."

Chief Justice Fly, in writing the opinion for the court in Lange Soap Co. v. Ward (Tex. Civ. App.) 269 S. W. 851, said:

"It is the rule, however, that a corporation will be estopped from setting up and defeating an action on the ground of the contract on which it is based being ultra vires, when the contract has been executed and benefits received thereunder. * * *

"In this case appellee had fully complied with his part of the contract, and appellant had obtained the benefit of payment of the amount due for its work in refining the oil, and it will not be permitted to appropriate the profits due to appellee on the ground that it had no authority to make the contract. Permitting such appropriation would be inequitable and unjust in the extreme * * *

the defense of ultra vires will not be available to protect injustice and unconscionable conduct in the appropriation of property to which it has no lawful right."

It is not necessary to cite other authorities here, although the brief of appellant cites many others.

The contract as set out and the business relations of the parties do not constitute a partnership. Markowitz v. Greenwall Theatrical Co. (Tex. Civ. App.) 75 S. W. 74.

Under the authority of Millers' Indemnity Underwriters v. Patten et al. (Tex. Civ. App.) 238 S. W. 240, the court should not have sustained a general demurrer to plaintiff's petition and dismissed the case. It is true, to some portions of the petition a special demurrer might have been good, but no general demurrer.

From the view we take of this case the court erred in sustaining a general demurrer to the petition, and for that reason the judgment is reversed and the cause remanded.