NUMBER 13-98-654-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


HOWARD EARL WEST, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 370th District Court of Hidalgo County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Hinojosa



 Appellant, Howard Earl West, Jr., was indicted for attempted
capital murder. After the trial court denied appellant's motion to
suppress his oral and written statements to police, appellant pleaded
guilty, reserving his right to appeal the court's ruling on the motion to
suppress. The trial court found him guilty and assessed his
punishment at twenty-five years imprisonment. By five points of error,
appellant contends the trial court erred in denying his motion to
suppress because: (1) appellant's oral and written statements were
obtained in violation of his Fifth Amendment right to counsel; (2)
appellant's oral and written statements were obtained in violation of his
Sixth Amendment right to counsel; (3) appellant's oral statement was
obtained in violation of article 38.22, section 3, of the code of criminal
procedure; (4) appellant's written statement was obtained in violation
of article 38.22, section 2, of the code of criminal procedure; and (5) the
trial court's finding of facts and conclusions of law "have no support in
the record."

A. Facts


 The trial court heard the following relevant testimony at the
suppression hearing: 

1. Reyes Ramirez


 At about 1:30 a.m. on March 3, 1995, Edinburg Police Detective
Reyes Ramirez ("Ramirez") was called to the scene of a stabbing. The
victim was a topless dancer who worked at the Longhorn Saloon. The
victim told Ramirez her attacker was an African-American male who
had followed her from the saloon. While at the crime scene, Ramirez
learned that a man's wallet had been found nearby. It contained a
driver's license and a University of Texas -- Pan American student
identification card belonging to Howard Earl West, Jr., an African-American male. Ramirez went to the Longhorn Saloon and spoke with
a security guard. After examining the picture on the driver's license, the
security guard stated that the man had been there that evening. 
Ramirez went to the hospital where the victim was being treated and
spoke with one of her co-workers, who also identified appellant as
having been at the saloon that night. The victim picked appellant out
of a photographic line-up several days later.

 Ramirez placed a telephone call to the West residence at
approximately 9:10 p.m. on the evening of March 4. Carmen West
("Mrs. West"), appellant's mother, answered the telephone and asked
Ramirez, unsolicited, if the police had found appellant's wallet. Ramirez
replied that they had, but needed to talk to him about something else. 
When appellant came to the phone, Ramirez asked that appellant go to
the Edinburg Police Station. Appellant appeared at the station
approximately 50 minutes later at about 10:00 p.m.

 At that time, appellant was placed under arrest for attempted
capital murder. Ramirez read appellant the Miranda(1) warnings, and
appellant executed a written waiver of those rights. 

 When Ramirez questioned him about the events of the previous
evening, appellant claimed he could not remember anything because he
had been very intoxicated. Ramirez terminated the interview and placed
appellant in a holding cell by himself. At approximately 2:00 a.m. the
next morning, Ramirez received word that appellant wanted to speak
to him. He brought appellant to his office and asked him what he
wanted. Appellant asked to be shown something that would refresh
his memory about what had happened the previous evening. In
response to this request, Ramirez took appellant out to the back of the
police station and showed him the victim's car. At that point, appellant
said, "Yes, I did it. I did something bad to that girl." Ramirez asked
appellant if he wanted to give a statement, and he replied that he did. 
They returned to Ramirez's office, where appellant was once again
advised of his rights. Appellant then gave a written statement in which
he admitted to following and attacking the victim. At no time did
appellant ask for an attorney or state that an attorney had been retained
for him. At no time was appellant handcuffed.

2. Arnoldo Cantu


 Attorney Arnoldo Cantu ("Cantu"), a longtime acquaintance of
Mrs. West, received a telephone call at his office from Mrs. West
sometime on Friday, May 3, 1995. He was not sure of the time, but he
is generally at his office until about 6:00 p.m. on Fridays. Mrs. West
told Cantu that she was worried because the police wanted appellant
to go to the police station. He told her what he customarily tells all of
his clients -- go to the station, but do not tell the police anything. He
told her he was willing to help in any way he could. A fee was not
discussed, but he considered himself retained. Cantu did not
accompany appellant to the police station; he did not call the station to
see if appellant had been arrested; he did not call appellant or Mrs.
West later; he did not contact the investigator on the case; and he did
not do anything regarding this case. He learned of appellant's arrest
some time later when Mrs. West called him again. He never spoke with
appellant.


3. Carmen West


 Mrs. West received a telephone call on the morning of Friday,
March 3, 1995, from a friend who worked at the sheriff's office. He
asked if her son had his wallet, and told her appellant might be in
trouble. She called Cantu at his office about 2:30 that afternoon and
told him about the accusation. He agreed to represent appellant if
necessary. That evening, at about 9:00 p.m., Ramirez called and
wanted to speak to appellant because his wallet had been found. She
and appellant agreed to go to the police station to pick up the wallet. 
She called Cantu at home, but he was not there. She left a message.

 She accompanied appellant to the police station to retrieve the
wallet. After about thirty minutes, Ramirez emerged and told her
appellant had been arrested. She went to his office where he told her
why her son had been arrested. "After a lengthy conversation," she
told Ramirez she needed to call her attorney and asked to use his
telephone. He told her that she had to use the telephone outside. She
called Cantu again and left a message for him to call her at the police
station. Ramirez asked her for appellant's truck and the jogging suit he
had worn the previous night, and she agreed. She called her brother,
and he brought the truck to the police station. Her daughter brought
the jogging suit later that evening. She did not speak to Cantu before
turning over this evidence.



4. Appellant


 Appellant graduated from high school and attended the University
of Texas -- Pan American for one and one-half years as a criminal
justice major. At the time of his arrest, he was familiar with Miranda
and the rights it concerned. His mother spoke to Cantu on Friday,
March 3. She told appellant that "we" had an attorney. Appellant did
not talk to Cantu, but "it was understood that he was our attorney." 
After he was arrested, he told Ramirez he had an attorney. Ramirez
stopped the interview and placed him in a holding cell. At 2:00 a.m.,
Ramirez called him out of the holding cell because he wanted to talk to
him about the case. Appellant said he would if his attorney was
present. Ramirez did not say anything except to ask if appellant wanted
a Coke. He handcuffed appellant in front. He was handcuffed while he
was in Ramirez's office.

 Appellant does not recall signing the waiver of rights at 10:00 p.m. 
He believes he did not receive it until after 2:00 a.m. Appellant does not
dispute signing the waiver while in custody. His written statement has
been changed. He did not give a confession, even though he signed the
document. As a criminal justice major, he would not have signed a
blank document, and he knew he had a right to an attorney. Appellant
testified that Ramirez had said "he was going to put in a word for me
and it would go a lot easier for me."



B. Factual Sufficiency


 By his fifth point of error, appellant contends the trial court's
finding of facts and conclusions of law "have no support in the record." 
Because appellant has prayed for a reversal and remand of his case, we
interpret this point of error as a challenge to the factual sufficiency of
the evidence supporting the trial court's findings of fact and conclusions
of law. See Clewis v. State, 922 S.W.2d 126, 133-34 (Tex. Crim. App.
1996) (Appellate courts should vacate a conviction based on factually
insufficient evidence and remand the cause for a new trial); see also
Tibbs v. Florida, 457 U.S. 31, 42 (1982); Clewis, 922 S.W.2d at 133 (If
a reviewing court determines that the evidence is legally insufficient, it
must render a judgment of acquittal).

 In reviewing the factual sufficiency of the evidence, the reviewing
court views all the evidence in a neutral light, and sets aside the verdict
only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust. Johnson v. State, 2000 Tex. Crim. App.
LEXIS 12, at *12 (Tex. Crim. App. Feb. 9, 2000) (citing Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996)). We consider all of the
evidence in the record related to the appellant's sufficiency challenge,
comparing the weight of the evidence that tends to prove guilt with the
evidence that tends to disprove it. Santellan v. State, 939 S.W.2d 155,
164 (Tex. Crim. App. 1997). In conducting its factual sufficiency review,
an appellate court reviews the fact finder's weighing of the evidence
and is authorized to disagree with the fact finder's determination. 
Johnson, 2000 Tex. Crim. App. LEXIS at *13; Clewis, 922 S.W.2d at
133. However, this review must employ appropriate deference to
prevent the appellate court from substituting its judgment for that of the
fact finder, and any evaluation should not substantially intrude upon the
fact finder's role as the sole judge of the weight and credibility of the
evidence. Johnson, 2000 Tex. Crim. App. LEXIS at *13; Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

 There is no abuse of discretion merely because the finder of fact
believes one version of the facts over another. See, e.g., Nonn v. State,
13 S.W.2d 434, 441-42 (Tex. App.--Corpus Christi 2000, pet. filed) (At
hearing on motion to suppress, the trial court was free to disbelieve
appellant and believe law enforcement officials' testimony that appellant
did not invoke his right to counsel).

 After reviewing all the evidence, we conclude that the trial court's
findings of fact and conclusions of law are not so against the
overwhelming weight of the evidence that they are manifestly unjust
and clearly wrong. We hold the evidence is factually sufficient to
support the trial court's findings of fact and conclusions of law. 
Appellant's fifth point of error is overruled.

C. Motion to Suppress


 A trial court's ruling on a motion to suppress is generally reviewed
for abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim.
App. 1999); Maddox v. State, 682 S.W.2d 653, 564 (Tex. Crim. App.
1985). The trial court is the sole trier of fact and judge of the weight
and credibility of the evidence. State v. Ballard, 987 S.W.2d 889, 891
(Tex. Crim App. 1999). The reviewing court may not disturb supported
findings of fact absent an abuse of discretion. Id. A review of a trial
court's ruling on a motion to suppress presents an application of law to
fact question. Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim. App.
1999). We must afford almost total deference to a trial court's
determination of facts supported by the record and its rulings on
application of law to fact questions of law, when those fact findings
involve an evaluation of the credibility and demeanor of witnesses. 
Maestas, 987 S.W.2d at 62; Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). However, we review de novo questions of law and
mixed questions of law and fact that do not turn on an evaluation of
credibility and demeanor. Oles, 993 S.W.2d at 106; Maestas, 987
S.W.2d at 62; Guzman, 955 S.W.2d at 89. 

 At the hearing on appellant's motion to suppress, the evidence
concerning appellant's possible invocation of his right to counsel was
conflicting, requiring the trial court to evaluate the witnesses' credibility
and demeanor. Thus, we must review appellant's points of error
regarding suppression of his oral and written statements under an
abuse of discretion standard, and defer to the trial court's findings as
long as they are supported by the record. See Maestas, 987 S.W.2d at
62.

D. Fifth Amendment Rights


 By his first point of error, appellant contends the trial court erred
in denying his motion to suppress on the grounds that his written and
oral statements were taken in violation of his Fifth Amendment right to
counsel.

 The Fifth Amendment to the United States Constitution guarantees
that "[n]o person . . . shall be compelled in any criminal case to be a
witness against himself, nor be deprived of life, liberty, or property,
without due process of law . . . ." U.S. Const. amend. V. The
importance of this right is emphasized by its inclusion in the Miranda
warnings. See Maestas, 987 S.W.2d at 61. However, invocation of an
individual's Fifth Amendment right to counsel "requires, at a minimum,
some statement that can be reasonably construed to be an expression
of a desire for the assistance of an attorney in dealing with custodial
interrogation by the police." Guidry v. State, 9 S.W.2d 133, 143 (Tex.
Crim. App. 1999) (citing McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)
and Green v. State, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996)). The
question of whether the accused has actually invoked the right to
counsel is an objective inquiry, requiring some statement that can
reasonably be construed as an expression of a desire for an attorney's
assistance. Davis v. United States, 512 U.S. 452, 459 (1994). 

 Based on the above evidence, the trial court found that appellant
never informed Ramirez or any other law enforcement official that he
had retained counsel to represent him on the attempted capital murder
charge, and that he did not invoke his right to counsel prior to giving his
statement. The testimony of Detective Ramirez supports the trial court's
findings. See Maestas, 987 S.W.2d at 62. Therefore, appellant never
invoked his Fifth Amendment right to counsel.

 Even if appellant had invoked his right to counsel, the trial court
found that appellant voluntarily, knowingly and intelligently waived his
constitutional rights before giving both the oral and the written
statement. This finding is also supported by the record. See id. 
Appellant's contention that his statements were obtained in violation of
his Fifth Amendment right to counsel must fail because he never
invoked his right to counsel, and despite having been advised of his
constitutional rights, he signed a written waiver of those rights. In
addition, appellant never indicated to the police that he had retained an
attorney or wished to consult one.

 Accordingly, we hold appellant's written and oral statements were
not taken in violation of his Fifth Amendment right to counsel.
Appellant's first point of error is overruled.

E. Sixth Amendment Rights 


 By his second point of error, appellant contends the trial court
erred in denying his motion to suppress on the grounds that his written
and oral statements were taken in violation of his Sixth Amendment
right to counsel.

 The Sixth Amendment provides that "in all criminal prosecutions,
the accused shall enjoy the right . . . to have the Assistance of Counsel
for his defense." U.S. Const. amend. VI. The Texas Court of Criminal
Appeals has recently revisited the Sixth Amendment right to counsel:

 The purpose of the [Sixth Amendment] right to counsel
is to protect the unaided layman after the adverse positions
of government and defendant have solidified with respect to
a particular alleged crime. McNeil v. Wisconsin, 501 U.S.
171, 111 S Ct. 2204, 2209, 115 L. Ed. 2d 158 (1991). The
right thus attaches at the initiation of adversarial
proceedings, whether by way of formal charge, preliminary
hearing, indictment, information, or arraignment, and no
request for counsel need be made by the accused. Brewer
v. Williams, 430 U.S. 387, 97 S. Ct. 1232, 1239, 51 L. Ed. 2d
424 (1977). Once the Sixth Amendment right to counsel
attaches, government efforts to elicit information from the
accused, including interrogation, represent "critical stages"
at which the right to counsel applies. Michigan v. Jackson,
106 S. Ct. [1404, 1407-08 (1986)]. 


Cobb v. State, No. 72,807, 2000 Tex. Crim. App. LEXIS 32, *9-10 (Tex.
Crim. App., March 15, 2000, cert. granted, 120 S.Ct. 2716 (2000)). A
fundamental safeguard provided by the Sixth Amendment is the
"general prohibition of state initiated questioning of an accused who is
represented by counsel during all critical stages of criminal proceedings
once formal adversarial proceedings have begun, except where counsel
is present or is informed of the interrogation." State v. Frye, 897
S.W.2d 324, 327 (Tex. Crim. App. 1995).

 The United States Supreme Court has not established a "bright
line" rule to mark when an adversarial proceeding has begun, but has
instead left this determination to the state courts to answer. United
States v. Gouveia, 467 U.S. 180, 187-89 (1984); Hidalgo v. State, 983
S.W.2d 746, 752 (Tex. Crim. App. 1999). The court of criminal appeals
has also declined to declare such a rule. Hidalgo, 983 S.W.2d at 752;
Frye, 897 S.W.2d at 327-28; Green v. State, 872 S.W.2d 717, 720 (Tex.
Crim. App. 1994). Instead, the court has recognized that determining
whether a particular event is a critical stage -- thus triggering a Sixth
Amendment right to counsel -- depends on whether the accused
requires aid in coping with legal problems or assistance in meeting his
adversary. Hidalgo, 983 S.W.2d at 752; Frye, 897 S.W.2d at 327-28;
Green, 872 S.W.2d at 720-22. 

 Appellant cites Miffleton v. State, 777 S.W.2d 76 (Tex. Crim. App.
1989), Forte v. State, 759 S.W.2d 128 (Tex. Crim. App. 1988) and
Bonhail v. State, 657 S.W.2d 131 (Tex. Crim. App. 1983), for the
proposition that the Sixth Amendment right to counsel attaches at the
time the complaint (the probable cause affidavit) is filed with a judge in
order to obtain an arrest warrant.(2) However, the court has since held,
in a case where indictment came after a complaint was filed but before
arraignment or any other legal proceeding, that the Sixth Amendment
right to counsel does not attach before indictment. DeBlanc v. State,
799 S.W.2d 701, 706 (Tex. Crim. App. 1990); see also Cobb, 2000 Tex.
Crim. App. LEXIS at *11 ("Once appellant was indicted for the Owings
burglary, his Sixth Amendment right to counsel attached to that
offense.").

 When appellant gave his statements, he had not yet been
arraigned or indicted, and no formal charges or adversarial proceeding
had begun against him. Thus, we conclude appellant's Sixth
Amendment right to counsel had not yet attached when appellant gave
his statement. We hold appellant's written and oral statements were
not taken in violation of his Sixth Amendment right to counsel. 
Appellant's second point of error is overruled.

F. Article 38.22, Section 2


 By his fourth point of error, appellant contends the trial court erred
in failing to suppress his written statement because the statement was
obtained in violation of article 38.22, section 2 of the code of criminal
procedure. Article 38.22, section 2 sets out the requirements for the
admissibility of an accused's written statement and provides as follows:

 No written statement made by an accused as a result
of custodial interrogation is admissible as evidence against
him in any criminal proceeding unless it is shown on the
face of the statement that:


 (a) the accused, prior to making the statement, either
received from a magistrate the warning provided
in Article 15.17 of this code or received from the
person to whom the statement is made a
warning that:


 (1) he has the right to remain silent and not
make any statement at all and that any
statement he makes may be used against
him at trial;


 (2) any statement he makes may be used as
evidence against him in court;


 (3) he has a right to have a lawyer present to
advise him prior to and during any
questioning;


 (4) if he is unable to employ a lawyer, he has
the right to have a lawyer appointed to
advise him prior to and during any
questioning; and


 (5) he has the right to terminate the interview
at any time; and


 (b) the accused, prior to and during the making of
the statement, knowingly, intelligently, and
voluntarily waived the rights set out in the
warning prescribed by Subsection (a) of this
section.


Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979).

 Appellant asserts the trial court erred in failing to suppress his
written statement because he was not read these rights, and he did not
waive them until after he had given the statement. However, the trial
court found that appellant had been advised of his Miranda rights three
times before giving his written statement, and had knowingly,
intelligently and voluntarily waived these rights before giving this
statement. The testimony of Detective Ramirez supports the trial
court's finding.

 Appellant also asserts the statement should have been suppressed
because the warnings on the face of the statement do not comport
exactly with the statutory requirements of article 38.22, section 2. The
warnings on the face of the statement read as follows:

Statement of Accused


 

 Date: 3-4-95


Statement of HOWARD EARL WEST JR.


On this the 4th day of March, 1995, at 2:00 o'clock a.m. at
Edinburg, Texas, I Howard Earl West Jr. have been warned
by Det. Sgt. Rey Ramirez Sr. the person to whom I am
making this statement, prior to and the making thereof:


(1) You have the right to remain silent and not make any
statement at all and that any statement you make may
be used against you at your trial; 


(2) Any statement you make may be used as evidence
against you in court;


(3) You have the right to have lawyer present to advise you
prior to and during any questioning;


(4) if you are unable to employ a lawyer, you have the
right to have a lawyer appointed to advise you prior to
and during any questioning; and


(5) You have a right to terminate the interview at any time.


 I understand my rights as set out above. I knowingly
and voluntarily waive such rights and freely and voluntarily
make the following statement without compulsion or
persuasion.


Appellant's handwritten initials appear over the "5" of "the 4th day of
March, 1995" and alongside each of the enumerated warnings. His
signature, witnessed by two persons, appears at the end of his
statement.

 Appellant contends that, since the warnings on the face of his
written statement read "I knowingly and voluntarily waive such rights"
instead of "I knowingly, intelligently and voluntarily waive such rights"
as required by section 2(b), the statement was erroneously admitted. 
However, the court of criminal appeals has made clear that the exact
language of article 38.22, section 2(b) need not be included on the face
of an accused's written statement in order for it to be admissible. In
Garcia v. State, 919 S.W.2d 370, 387 (Tex. Crim. App. 1994), the
defendant's statement contained the language of the required section
2(a) warnings but did not contain the exact "knowingly, intelligently
and voluntarily" language of section 2(b). After finding the defendant
unquestionably had received his section 2(a) warnings, the court noted:

 We agree that appellant's statement, while sufficient to
comply with Article 38.22, Section 2(b), is by no means a
model of clarity on this point. The clearly preferable practice
is for a written statement, to meet unambiguously the
requirements of Section 2(b), to contain the following
language, near or adjacent to the signature of the individual
giving the statement: "I knowingly, voluntarily and
intelligently waived the rights described above before and
during the making of this statement." See Penry v. State,
691 S.W.2d 636 (Tex. Crim. App. 1985) and Cannon v.
State, 691 S.W.2d 664, 674 (Tex. Crim. App. 1985). We are
persuaded, however, that, though a close call, appellant did
on the face of his voluntary statement, knowingly, voluntarily
and intelligently waive his Section 2(a) rights in a manner
sufficient to comply with the legislature's intent when it
enacted Section 2(b).


Garcia, 919 S.W.2d at 387. The court further noted that the trial court
had found that the defendant evidenced his understanding of his rights
and his waiver of them by placing his initials by each warning, and that
he orally waived his rights after being informed of his Miranda rights
and prior to giving his written statement. Id.

 Garcia is directly on point with this case. Here, the trial court
found that appellant was informed of his Miranda rights prior to the
giving of the written statement. The warnings on the written statement
obviously comport with the requirements of section 2(a). Therefore, we
hold the fact that one word was dropped out of the section 2(b)
language does not render this statement inadmissible under article
38.22, section 2. Appellant's fourth point of error is overruled.



G. Article 38.22, Section 3


 By his third point of error, appellant contends the trial court erred
in failing to suppress his oral statement -- "Yes, I did it. I did something
bad to that girl." -- because it does not comply with the requirements
for admissibility of oral statements set out in article 38.22, section 3 of
the code of criminal procedure. Article 38.22, section 3 provides:

Sec. 3. (a) No oral or sign language statement of an accused
made as a result of custodial interrogation shall be
admissible against the accused in a criminal proceeding
unless:


 (1) an electronic recording, which may include
motion picture, video tape, or other visual
recording, is made of the statement;


 (2) prior to the statement but during the recording
the accused is given the warning in Subsection
(a) of Section 2 above and the accused
knowingly, intelligently, and voluntarily waives
any rights set out in the warning; 


 (3) the recording device was capable of making an
accurate recording, the operator was competent,
and the recording is accurate and has not been
altered;


 (4) all voices on the recording are identified; and


 (5) not later than the 20th day before the date of the
proceeding, the attorney representing the
defendant is provided with a true, complete, and
accurate copy of all recordings of the defendant
made under this article.


* * * * *



Sec. 5. Nothing in this article precludes the admission of a
statement made by the accused . . . that is the res gestae of
the arrest or of the offense, or of a statement that does not
stem from custodial interrogation. . . .


Tex. Code Crim. Proc. Ann. art. 38.22, §§ 3, 5 (Vernon Supp. 2000).

 It is undisputed that no recording was made of appellant's oral
statement. The State, however, argues that the exemption from the
necessity of recording the oral statement set forth in section 5 applies,
and that the oral statement was properly found to be admissible
because: (1) the statement was not the result of a custodial
interrogation, and (2) it was res gestae of the offense and, therefore,
exempt from the prohibitions of section 3. Appellant was
unquestionably in custody when he made the oral statement. 
Therefore, the issue presented is whether the statement resulted from
interrogation.

 Custodial interrogation is questioning initiated by law enforcement
officers after a person has been taken into custody or otherwise
deprived of his freedom in any significant way, see Miranda, 384 U.S.
at 444, or speech or conduct that the police should know is reasonably
likely to elicit an incriminating response from the suspect. Rhode Island
v. Innis, 446 U.S. 291, 301 (1980); Janecka v. State, 739 S.W.2d 813,
828 (Tex. Crim. App. 1987); McCrory v. State, 643 S.W.2d 725, 734
(Tex. Crim. App. 1982).

 Our research has found no case directly on point with the exact
circumstances of this case. However, the facts in Wiley v. State, 699
S.W.2d 637 (Tex. App.--San Antonio 1985, pet. ref'd), are very similar
to this case. In Wiley, the defendant passed two police officers he knew
and spoke to them. Shortly thereafter, the officers received a radio
dispatch about an assault that had just occurred nearby. The
description of the suspect matched Wiley, so the officers went to his
residence to question him. After Wiley was given his Miranda warnings,
he denied any knowledge of the assault and gave the officers
permission to search his room. After noticing a fresh bloodstain on the
white wall against which Wiley was leaning, the officers handcuffed
him and proceeded to search the room. They found bloodied clothing
and a knife with fresh blood on it. When they showed these items to
Wiley without further questioning, he stated, "Okay, I did it." The San
Antonio Court of Appeals held that:

appellant's statement was not the product of interrogation. 
The police merely showed the evidence to appellant, who,
although advised of his right to remain silent, admitted his
involvement in the assault. Consequently, the statement
was not inadmissible under article 38.22.


Id. at 639.

 The San Antonio Court has revisited this issue in a very recent
opinion. In Lam v. State, 2000 Tex. App. LEXIS 2536 (Tex. App.--San
Antonio, April 19, 2000), the defendant was arrested for the murder of
his father and attempted murder of his stepmother. While being driven
by a police officer to a hospital for a blood sample pursuant to a search
warrant, Lam began to question the officer asking: (1) what they were
doing; (2) what was going to happen to him; and (3) what was the
medical status of his stepmother. Id. at *14-15. At that point, the
officer reminded Lam that he had requested an attorney, that the officer
was not questioning Lam, and that if Lam wished to continue talking,
he should wait until they got back to the police department so the
conversation could be recorded. Id. Lam responded that he had many
problems with his stepmother and that she hated him. Id. Thus,
tending to establish a motive for the attempted murder of the
stepmother. In upholding the admission of the oral statement at trial,
the court noted that, from the record, the trial court could have believed
Lam initiated the conversation with the officer, that Lam had blurted out
the statement, and that the officer's conduct was not the functional
equivalent of custodial interrogation. Id. at *16-17.

 We find the reasoning of these cases persuasive. We hold that
appellant's oral statement was not the product of custodial
interrogation, and was not inadmissible under article 38.22, section 3. 
Appellant's third point of error is overruled.

 In light of our disposition of appellant's third point of error, it is not
necessary to address the State's contention that the oral statement was
res gestae of the crime. Tex. R. App. P. 47.1.

 We hold the trial court did not err in denying appellant's motion to
suppress.

 The judgment of the trial court is affirmed.



 FEDERICO G. HINOJOSA

 Justice



Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this 

the 17th day of August, 2000.

1. Miranda v. Arizona, 384 U.S. 436 (1966).
2. Appellant asserts this procedure was followed here. Although the arrest
warrant and its probable cause affidavit do not appear in the record, we will assume
this procedure for arrest was followed because there is no evidence that appellant
was arrested without a warrant, and no record of appellant having been
"magistrated" after a warrantless arrest. Tex. Code Crim. Proc. Ann. art. 14.06
(Vernon Supp. 2000).