Affirmed and Opinion filed September 16, 2004









Affirmed and Opinion filed September 16, 2004.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00534-CR

____________

 

RODNEY MONROE
HUNTER,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 945,584

 



 

O P I N I O N

A jury convicted appellant, Rodney Monroe
Hunter, of murder and, after finding an enhancement paragraph to be true,
sentenced him to 70 years’ confinement in the Texas Department of Criminal
Justice.  In two points of error,
appellant claims the trial court erred in admitting his confessions because
they were given involuntarily and were taken in violation of his right to
counsel.  We affirm.

 

 








                                                  BACKGROUND

On October 14, 2002, appellant was
arrested in Senatobia, Mississippi for the murder of his live-in girlfriend,
Veronica Colar, in Houston, Texas. 
Houston Police Officers Curtis Scales and Rick Moreno drove to
Mississippi to speak with appellant. 
Early in the morning on October 15, the officers tape-recorded two
interviews of appellant.  In the first
interview, appellant invoked his right to counsel.  In the second, appellant waived his right to
counsel and confessed to killing Colar in self-defense.  Later, around ten o’clock in the morning, the
officers tape-recorded a third interview in which appellant repeated his
earlier confession.

                                                      ANALYSIS

In two points of error, appellant argues
the trial court erred in admitting the second and third oral statements because
they were obtained in violation of his right to counsel and were given
involuntarily.  We review a trial court’s
ruling on a motion to suppress for an abuse of discretion.  Oles v. State, 993 S.W.2d 103, 106
(Tex. Crim. App. 1999).  Additionally, at
a suppression hearing, the trial judge is the trier of fact and assesses the
witnesses’ credibility and the weight to be given their testimony.  State v. Ballard, 987 S.W.2d 889, 891
(Tex. Crim. App. 1999).  As long as they
are supported by the record, we afford almost total deference to a trial
court’s findings of historical fact. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Furthermore, we defer to a trial court’s
application of law to fact rulings if they turn on an evaluation of credibility
and demeanor.  Id.

Shortly after the first interview began,
appellant invoked his right to counsel. 
After appellant invoked his right, the following exchange occurred:

 

Officer
Moreno:      To the best of your
knowledge, when was the last time that you had sex with [the victim]?

Appellant:               Seems
like a Thursday or something.

Officer
Scales:       You don’t have to talk with
us anymore.  We’ll just take your DNA
sample.








Officer Moreno:      You understand . . . that persons or
person that was responsible for hiding you out here in Mississippi when you
were wanted, and people were advised that you were wanted, can be filed on for
harboring a fugitive?  You understand
that?

 

The officers then turned the tape-recorder off.  The trial court suppressed this first
interview.  Thus, the jury never heard
the question regarding when appellant had last had sexual intercourse with the
victim or appellant’s answer to the question. 
However, the trial court did not exclude the second or third interviews,
finding that appellant reinitiated conversation with the police and his
confessions were voluntary.

Fifth Amendment
Right to Counsel

Appellant contends the trial court’s
admission of the second and third interviews violated his right to counsel
under the Fifth Amendment because he had invoked his right to counsel during
the first interview.[1]  Once an accused requests counsel, all
interrogation by the police must cease until counsel is provided or until the
accused reinitiates conversation.  Dinkins
v. State, 894 S.W.2d 330, 349 (Tex. Crim. App. 1995).  Statements obtained after the accused has
invoked his right to counsel are admissible only if the court finds that the
accused initiated the discussion and he knowingly and intelligently waived the
rights he had invoked.  Smith v.
Illinois, 469 U.S. 91, 95 (1984). 
The State has the burden of establishing a valid waiver.  Upton v. State, 853 S.W.2d 548, 553
(Tex. Crim. App. 1993).  Here, appellant
challenges the trial court’s finding that he reinitiated conversation with the
police.








The officers testified that, after the
tape-recorder was turned off, appellant did not respond to the comment about
harboring a fugitive.  The officers
performed a buccal swab to obtain a DNA sample and talked with appellant about
that procedure.  The officers prepared to
leave and knocked on the door of the cell in which they had been interviewing
appellant.  Officer Moreno said they
knocked on the door two or three times but did not get an immediate
response.  While waiting for someone to
open the door, appellant asked about the punishment range for a case of this
nature.  Officer Scales thought that
someone had already opened the cell door before appellant asked the
question.  Regardless, both officers
testified that appellant reinitiated the conversation.  After being reminded he had asked for
counsel, appellant said he wanted to waive his right to counsel, and the
officers returned to the interview table. 
The tape-recorder was turned back on. 
One of the officers re-read appellant his Miranda rights.  Appellant waived those rights on the tape and
spoke with the officers about the murder. 
During the third interview, appellant again waived his rights and
acknowledged that he had reinitiated conversation with the officers.  

Appellant testified at the hearing on the
motion to suppress and disputed much of the officers’ testimony.  Appellant claimed that he first requested an
attorney before the tape was turned on but was told that there was no way they
could find an attorney at that time in the morning.  Appellant also said that the conversation
never ended when the tape-recorder was turned off after the first
interview.  He claimed that the officers
threatened to have his mother’s parole revoked because she was harboring
him.  Appellant admitted that he had
understood his rights and knew he did not have to speak to the officers but did
so anyway.  He said he gave a statement
only because of the threat against his mother.








Although the record contains conflicting
evidence regarding whether appellant initiated further contact with the police,
the trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  Moreover, the
determination of whether an accused reinitiated conversation with the police
depends on the particular facts and circumstances surrounding each case.  Muniz v. State, 851 S.W.2d 238, 253
(Tex. Crim. App. 1993).  Thus, where, as
here, the evidence is conflicting, we must defer to the factual findings of the
trial court.  Ramirez v. State, 76
S.W.3d 121, 125–26 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  Accordingly, we hold the trial court did not
err in finding that appellant had reinitiated conversation with the police.

Voluntariness

Appellant raises two challenges regarding
the voluntariness of his confessions. 
First, appellant argues the confessions are tainted as a matter of law
because Officer Moreno admittedly continued to speak with appellant after he
had invoked his right to counsel. 
Second, appellant contends the confessions were the product of improper
threats.  

Appellant argues that Officer Moreno’s
continued questioning rendered any subsequent waiver of the right to counsel
involuntary.[2]  However, the Court of Criminal Appeals has
determined that, although a violation of the right to counsel nullifies subsequent
waivers given at police-initiated interviews, a violation does not nullify
subsequent waivers given at accused-initiated interviews.  Herron v. State, 86 S.W.3d 621, 628–29
(Tex. Crim. App. 2002).  The trial court
found appellant had reinitiated conversation with the police, so we do not find
the continued questioning rendered the statements involuntary as a matter of
law.  








However, appellant also contends that
threats made by the officers to revoke his mother’s parole coerced him into
giving the confessions.[3]  To support his claim, appellant relies upon
(1) the comment made by Officer Moreno about harboring a fugitive and (2)
additional threats he claims the officers made to him when the tape-recorder
was turned off.  Appellant points to the
short lapse in time between Officer Moreno’s comment and appellant’s purported
reinitiation of conversation as evidence of the direct coercive effect of the
comment.

The rule that requires interrogation to cease
until counsel is provided or until the accused reinitiates conversation seeks
to assure “that any statement made in a subsequent interrogation is not the
result of coercive pressures.”  Minnick v. Miss., 498 U.S. 146, 151–52
(1990).  Statements cannot be obtained by
the influence of hope or fear applied by the police to the accused’s mind.  Creager v. State, 952 S.W.2d 852, 856
(Tex. Crim. App. 1997).  Thus, a threat
made by police officers to arrest or punish a close relative may render an
accused’s subsequently made confession inadmissible.  Roberts v. State, 545 S.W.2d 157, 160
(Tex. Crim. App. 1977).  The ultimate
question is whether the accused’s will was overborne.  Ramirez, 76 S.W.3d at 126. 

In this case, appellant contends that,
when the tape was turned off, the officers made specific threats to prosecute
his mother and to revoke her parole.  The
officers testified that no such threats were made.  In fact, the officers said they did not know
the status of appellant’s mother until they interviewed her later that same
day.  Because the trial court is the sole
trier of fact and judge of the credibility of the witnesses, the trial court
could choose to accept the testimony of the officers and disbelieve appellant’s
testimony.  Ross, 32 S.W.3d at
855. 








There was evidence that appellant was told
after he had invoked his right to counsel that he did not have to answer any
more of the officers’ questions and that, after the comment about harboring a
fugitive, the officers terminated the first interview.  They took a buccal swab, prepared to leave,
and attempted to leave the interview room. 
After appellant reinitiated conversation by asking about the punishment
range for a case of this nature, both officers reminded appellant that he had
invoked his right to counsel and did not return to the interview table until
appellant said he wanted to waive the right to counsel and speak with the
officers.  Officer Moreno said it
appeared that appellant understood his rights, and he was confident that
appellant knowingly and intelligently waived those rights.  In sum, although only a short time elapsed
between the termination of the first interview and appellant’s reinitiation,
there was evidence that the officers had no intent to talk with appellant
further about the murder or to create a coercive environment such that
appellant was able to freely consider his options and rights. 

Additionally, Officer Moreno testified
that he did not make the comment about harboring a fugitive as a threat to
obtain appellant’s confession.  Officer
Moreno said he asked the question because he was unsure whether members of
appellant’s family had harbored him, and he was considering the possibility of
discussing with a district attorney the filing of charges against appellant’s
father when he returned to Houston. 
There was a question as to whether appellant had talked with his father
about what was going on.  This was a
concern because appellant’s father may have mislead the police when they
searched the father’s house and lied about seeing appellant at the victim’s
funeral.  Officer Moreno said he was
trying to get the truth about whether appellant’s father had lied to the
police.  In this context, there is
evidence to support the trial court’s finding that the comment was not an
express or implied threat that, if appellant did not cooperate with the police,
his family would be prosecuted.  The
trial court could have concluded that Officer Moreno was merely attempting to
find out whether appellant’s father had committed a crime.

In any event, appellant’s activities
placed his family members under suspicion, and appellant’s desire to extricate
the relatives does not render his self‑motivated confessions
involuntary.  Roberts, 545 S.W.2d
at 160.  Where no threat is made by the
police, an accused’s belief that his cooperation will benefit a relative will
not render his subsequent confession inadmissible.  Id. 








Appellant said he confessed only because
the officers threatened to revoke his mother’s parole.  The trial court could have chosen, as the
trier of fact, to believe the officers’ testimony that no threat was made
concerning appellant’s mother.  Moreover,
we are not willing to say as a matter of law that the short lapse in time is
dispositive as to whether appellant’s reinitiation was voluntary.  The issue of whether coercive pressures
overbore appellant’s will turns ultimately on the credibility and demeanor of
the witnesses heard by the trial court. 
Thus, when all of the circumstances are considered, we conclude the
trial court acted within its discretion in finding that the confessions were
made voluntarily.  We will not disturb
the trial court’s finding that appellant voluntarily reinitiated conversation
with the police.  See Herron, 86
S.W.3d at 629.  Hence, the admission of
the subsequent statements was not prohibited under the Fifth or Fourteenth
Amendments.  

Sixth Amendment Right to Counsel

Appellant contends that the admission of
the two subsequent interviews violated his right to counsel under the Sixth
Amendment.  “Unlike the Fifth Amendment
right to counsel, the Sixth Amendment right to counsel does not attach until a
prosecution is commenced, that is, ‘at or after the initiation of adversary
judicial proceedings against the defendant.’” 
Green v. State, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996) (quoting
United States v. Gouveia, 467 U.S. 180, 187 (1984)).  However, the point at which adversary
judicial proceedings begin is a matter of state law.  See Hidalgo v. State, 983 S.W.2d 746,
752 (Tex. Crim. App. 1999).  In this
case, the State had filed a felony complaint against appellant before he was
arrested.  But, it is not entirely clear
under Texas law whether the filing of a felony complaint is sufficient to
trigger Sixth Amendment protections.  Compare
Green v. State, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994) (declining to
hold that filing of felony complaint triggered Sixth Amendment protections but
indicating such a result was “at least consistent with, if not dictated by”
United States Supreme Court precedent), with Barnhill v. State,
657 S.W.2d 131, 132 (Tex. Crim. App. [Panel Op.] 1983) (finding Sixth Amendment
right to counsel attached upon filing of felony complaint with magistrate).








Assuming adversary judicial proceedings
had begun, once the Sixth Amendment right attaches, “government efforts to
elicit information from the accused, including interrogation, represent
‘critical stages’ at which the [right] applies.”  Michigan v. Jackson, 475 U.S. 625, 630
(1986).  The burden is then on the State
to prove that the accused waived his Sixth Amendment right to counsel
voluntarily, knowingly, and intelligently. 
Robinson v. State, 851 S.W.2d 216, 224 (Tex. Crim. App.
1991).  Waiver is shown as a matter of
law with regard to pretrial questioning if an accused (1) who has not yet
retained or been appointed counsel (2) decides voluntarily not to rely on his
right to counsel and (3) decides so with the understanding that he could remain
silent and request a lawyer and that the State could use any statement against
him.  Id.  Miranda waivers may be sufficient to
show the voluntary relinquishment required for waiver of the Sixth Amendment
right to counsel.  Patterson v.
Illinois, 487 U.S. 285, 292–93 (1988).

Here, appellant had not yet retained or
been appointed an attorney in connection with the murder charge.  The trial court determined that appellant had
reinitiated conversation with the police. 
The officers gave appellant his Miranda warnings during both the
second and third interviews.  The
warnings informed appellant that he could remain silent and request an attorney
and that, if he chose to give a statement, the statement could be used against
him in a later proceeding.  Appellant
said he understood his rights and waived his right to counsel.  Thus, the trial court did not err in finding
that the admission of the statements was not barred by the Sixth Amendment. 

We overrule appellant’s two points of
error and affirm the judgment of the trial court.

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Opinion filed September 16, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
— Tex. R. App. P. 47.2(b).

 











[1]  In his first
point of error, appellant claims his right to counsel under the Fifth and Sixth
Amendments was violated.  In his
discussion regarding the Fifth Amendment challenge, appellant disputes the
trial court’s finding that he reinitiated conversation with the police.  Appellant also argues that, even if we were
to uphold the finding of reinitiation, the reinitiation was involuntary because
Officer Moreno asked additional questions before any alleged reinitiation
occurred.  We will address this later
challenge along with appellant’s second point of error attacking the voluntariness
of the confessions.





[2]  To support
this contention, appellant relies on United States v. Gomez, 927 F.2d
1530 (11th Cir. 1991).  In Gomez,
the court found that, when an officer does not cease an interrogation upon a
request of counsel, any statement later given by the accused is inadmissible
because, once the right to counsel had been violated, “no claim that the
accused ‘initiated’ more conversation will be heard.”  Id. at 1538–39.  The Gomez court conceded, however,
that whether the coercive effect of the improper interrogation may have
subsided depends on the facts of the case. 
Id. at 1539 n.9.  We
disagree with the court’s finding that the timing of the reinitiation is the
prime factor to consider in evaluating the voluntariness of the
reinitiation.  Rather, the appropriate
inquiry should evaluate the totality of the circumstances and determine whether
the reinitiation was the product of coercive pressures.  See Ramirez, 76 S.W.3d at 125. 





[3]  Because he claims the statements
were the product of improper threats, appellant argues the admission of the
statements violated his right to due process under the Fifth and Fourteenth
Amendments to the United States Constitution.