AFFIRMED and Opinion Filed August 1, 2019



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00190-CV

## IN THE MATTER OF Z.J., A JUVENILE

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-18-00958-X**

## MEMORANDUM OPINION
Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

The juvenile court certified Z.J., a sixteen year old, to be tried as an adult and transferred criminal proceedings to a criminal district court. In a single issue, Z.J. argues there was no testimony at the underlying hearing concerning the services available to Z.J. regarding a commitment to the Texas Juvenile Justice Department, and it was therefore "not possible for the court to conclude no services were available." We affirm.

In August 2018, the State filed a petition for discretionary transfer asking the juvenile court to waive its jurisdiction and transfer Z.J.'s case to adult criminal court. See TEX. FAM. CODE ANN. § 54.02. As required by family code section 54.02(d), the trial court ordered a complete diagnostic study, social evaluation, and full investigation of Z.J., his circumstances, and the circumstances of the alleged offenses.

After the evaluations were completed, the juvenile court conducted a hearing regarding the State's motion to transfer. Dallas police detective Adam Thayer testified he investigated "a series of robberies involving several youth" that occurred on July 22, 2018. Z.J. was one of the juvenile suspects, along with five other juveniles. The first robbery occurred on Pentagon Parkway in Dallas. The second robbery victim was Mauricio Hernandez. Hernandez was outside his residence when a black Chevy Impala pulled up, and six male suspects "jumped out of the car and punched him in the face." One of the assailants matched Z.J.'s description. Z.J. kept saying, "come on man, give me your wallet." Z.J. was "holding a black semiautomatic pistol and then struck the complainant Hernandez over the head with the pistol two or three times." Minutes after the Hernandez robbery, Z.J. and the other suspects arrived in the Impala and robbed Garrett and Caroline Scharton at gunpoint and stole Caroline's cell phone. Surveillance video of the robbery showed Z.J. using a pistol to commit the robbery. After the Scharton robbery, Z.J. and the other juveniles proceeded to a location on Crow Creek Drive where they committed "the same type of robbery" against Gerardo Rodriguez-Mata. The juveniles took cash that was in Rodriguez-Mata's hand and $80 worth of pizza that he was delivering. After D.T., the juvenile driving the Impala, wrecked the car and attempted to run away, Mesquite police found the Impala, and all the juveniles involved in the robberies were arrested and charged. One of the other juveniles, J.C., later testified at his plea hearing that Z.J. was "the leader" and was "in possession of the pistol during the entire crime spree." Another juvenile, T.J., also described Z.J. as the leader and said Z.J. had a pistol during all the offenses. Thayer testified there was probable cause to believe Z.J. committed the offenses that Thayer testified about; criminal proceedings were required in Z.J.'s case for the welfare of the community; Z.J.'s conduct was willful and violent, and he used a deadly weapon during the course of the offenses; personal injury resulted from the offenses to Hernandez and the Schartons; and the public needed protection from Z.J.

Dr. Leilani Hinton, assistant chief psychologist for the Dallas County Juvenile Department, testified she evaluated Z.J. and determined he was fit to proceed. Hinton testified that, in terms of criminal sophistication, Z.J. is "at least as sophisticated as peers his age." However, on "intellectual tests developmentally," he was lower than peers his age, and intellectually he fell in the "extremely low range." Hinton testified Z.J. had "very good knowledge of the legal system," he had "been through the system several times before," and he had "good knowledge of possible legal defenses." Hinton testified she was not surprised to hear Z.J. was the leader in the offense, and he did not show any empathy or sympathy for the victims. When questioned about the underlying offenses, Z.J. said he did not believe they were very serious because he did not kill or shoot anyone.

Kedrick Smith, a probation officer for the Dallas County Juvenile Department, testified concerning the social evaluation and investigative report he made in this case. According to Smith's report, Z.J. has been referred to the juvenile department eleven times. Z.J.'s first referral was on October 27, 2015 for criminal trespass, and he received deferred prosecution. Z.J. received two additional referrals for criminal trespass on October 29, 2015 and March 11, 2016, and he completed his deferred prosecution on August 9, 2016. On October 27, 2016, Z.J. received his fourth referral for theft of property. Z.J. was released but continued to reoffend. Between November 1, 2016 and February 17, 2017, Z.J. received five additional referrals for offenses including theft of property, possession of marijuana, aggravated robbery, aggravated sexual assault, and unauthorized use of a motor vehicle. On July 17, 2017, Z.J. was adjudicated for aggravated assault with a deadly weapon and theft of property and was ordered to placement at the Dallas County STARS (sex offender residential treatment center). Z.J. was admitted to the STARS program on July 21, 2017 and was successfully discharged from the program on May 24, 2018.

Upon Z.J.'s release, he was placed on Intensive Supervision Probation in the custody of his mother. However, Z.J. continued to fail to comply with the terms and conditions of his probation, and he was referred to the home detention program to help monitor his whereabouts and prevent him from further engaging in delinquent conduct. On June 1, 2018, Z.J.'s mother notified his probation officer that a runaway report was made because Z.J. had left home the previous night and had not returned. A judge signed a bench warrant on June 5, 2018, and Z.J. was arrested and released to the Community Alternative Initiative program where he completed the program but remained when his mother refused to sign an agreed order allowing Z.J. to reside with his aunt. On July 5, 2018, Z.J. was detained at the juvenile detention center for a violation of conditions of release. On July 10, 2018, Z.J. was released into his father's custody, but his father reported Z.J. left home without permission, violating the terms of his probation, on July 12, 2018. On July 20, 2018, a judge signed another bench warrant for Z.J., and Z.J. was detained for the underlying offenses in this case on July 22, 2018.

Smith testified that, while Z.J. was in detention, he did well for a time, was on "a Level 4," and was placed in the Honors Program for "maybe a month or two." Z.J.'s behavior "declined," and he was involved in a fight, aggressive toward staff, and had "lots of peer conflict." Smith testified Z.J. has a history of smoking marijuana daily and claims to be in a gang. Smith confirmed that detention was a "highly structured environment" where Z.J.'s level was a 2.3 at the time Smith testified. Smith testified it was "correct" to say Z.J. "can't behave properly here in a high level of structure for juveniles" and "even the possibility of" the Texas Juvenile Justice Department was "not going to be enough" for Z.J. Smith also confirmed that "the prospects of adequate protection of the public and the likelihood of rehabilitation" by the use of procedures and services and facilities available to the juvenile court was "remote." Smith testified that, for the welfare of the

community and the seriousness of the offenses and the background of Z.J., criminal proceedings were required, and Smith recommended Z.J. be transferred to criminal district court.

At the conclusion of the hearing, the juvenile court made oral findings on the record. On February 4, 2019, the court signed its waiver of jurisdiction and order of transfer to a criminal district court. The order stated the court considered "all the testimony, diagnostic study, social evaluation, and full investigation" and found "it is contrary to the best interest of the public to retain jurisdiction." This interlocutory appeal followed.

To waive its jurisdiction and transfer Z.J. to adult criminal court, the juvenile court had to find Z.J. was alleged to have committed a felony, he was fourteen years old or older at the time he committed the alleged offense, after a full investigation and a hearing there was probable cause to believe Z.J. committed the alleged offense, and the welfare of the community requires criminal proceedings because of the alleged offense's seriousness or Z.J.'s background. *See* TEX. FAM. CODE ANN. § 54.02(a)(1)–(3).

In making the determination required in subsection (a), the juvenile court had to consider, among other matters: (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) Z.J.'s sophistication and maturity; (3) Z.J.'s record and previous history; and (4) the prospects of adequate protection of the public and the likelihood of Z.J.'s rehabilitation by use of procedures, services, and facilities currently available to the juvenile court. *See id.* § 54.02(f). These are nonexclusive factors that serve to facilitate the juvenile court's balancing of the potential danger to the public posed by the particular juvenile offender with his amenability to treatment. *Moon v. State*, 451 S.W.3d 28, 38 (Tex. Crim. App. 2014) (citing *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)). Family code section 54.02(h) requires that, if the juvenile court waives jurisdiction, "it shall state

specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court." TEX. FAM. CODE ANN. § 54.02(h); *Moon*, 451 S.W.3d at 38.

With regard to our review of that order, the court of criminal appeals has instructed us as follows:

> [I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

*Moon*, 451 S.W.3d at 47. Further, a reviewing court should measure sufficiency of the evidence to support the juvenile court's stated reasons for transfer by considering the sufficiency of the evidence to support the facts as they are expressly found by the juvenile court in its certified order. *In re G.B.*, 524 S.W.3d 906, 914–15 (Tex. App.—Fort Worth 2017, no pet.). The appellate court should not be made to rummage through the record for facts that the juvenile court might have found, given the evidence developed at the transfer hearing, but did not include in its written transfer order. *Id.* Thus, in conducting a sufficiency review of the evidence to establish the facts relevant to section 54.02(f) factors and any other relevant historical facts, which are meant to inform the juvenile court's discretion whether the seriousness of the offense alleged or the background of the juvenile warrants transfer for the welfare of the community, the appellate court must limit its sufficiency review to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile court's transfer order under Section 54.02(h). *Id.*

However, while the order must show the juvenile court considered the four factors in section 54.02(h), the court "need make no particular findings of fact with respect to those factors." *Moon*, 451 S.W.3d at 41–42. Further, the court may order a transfer on the strength of any combination of the criteria listed in section 54.02(f). *Hidalgo*, 983 S.W.2d at 754 n.16.

Z.J. argues there was not any testimony about the services available to Z.J. regarding a commitment to the Texas Juvenile Justice Department. Absent any testimony regarding the juvenile prison and the services available to the court, Z.J. argues it was not possible for the court to conclude no services were available for Z.J. Z.J. also asserts generally that the "overwhelming weight of the evidence supported a finding of the juvenile court retaining jurisdiction and denying the State's petition."

Contrary to Z.J.'s assertions, the juvenile court heard Smith's testimony that it was "correct" to say Z.J. "can't behave properly here in a high level of structure for juveniles" and "even the possibility of" the Texas Juvenile Justice Department was "not going to be enough" for Z.J. Smith also confirmed that "the prospects of adequate protection of the public and the likelihood of rehabilitation" by the use of procedures and services and facilities available to the juvenile court was "remote." In the juvenile court's order of transfer, the court specifically stated among its reasons for its disposition that "the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court is remote."

The record shows further that Z.J. had been referred to the juvenile department eleven times between the ages of thirteen and sixteen. One of the offenses, Smith testified, was the aggravated sexual assault of "an adult grown woman." During the sexual assault, Z.J. had a deadly weapon and "pointed it at the victim." The evidence showed Z.J. was the "leader" of the crime spree on July 22, 2018 and used a pistol in committing the aggravated robberies at that time. Z.J. had been

provided services available to the juvenile court, but as set forth in the juvenile court's transfer order, Z.J. "unsuccessfully completed juvenile probation and exhibited assaultive conduct while in juvenile placement and in detention." Thus, despite Z.J.'s history of receiving services available to the juvenile court, Z.J.'s criminal behavior continued and escalated over time. "As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment absent a scenario in which the facts in the transfer order, based on evidence produced at the transfer hearing . . . bear no rational relation to the specific reasons the order gives" to justify transfer. *Moon*, 451 S.W.3d at 46. In light of the juvenile court's findings regarding Z.J.'s receipt of services and their inefficacy and our review of the record, which supports those findings, we conclude the juvenile court did not abuse its discretion by waiving jurisdiction and transferring Z.J. for trial as an adult. We overrule Z.J.'s sole issue.

The juvenile court's certification and transfer order is affirmed.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE


190190F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF Z.J., A JUVENILE

No. 05-19-00190-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JD-18-00958-X.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

In accordance with this Court's opinion of this date, the juvenile court's certification and transfer order is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 1, 2019.